Argued March 29, reversed and remanded April 26, 1921.

## BOORD *v.* KAYLOR.

(197 Pac. 296.)

**Fraud—Allegations Essential.**

1. In an action for deceit, the complaint must show that the alleged representations were false, that defendant knew them to be false, or made them recklessly of his own knowledge, without knowing whether they were true or false; that he so made them, intending that the party to whom they were made should act upon them, and that such party accepted them as true, and acted upon them to his damage.

**Fraud—Complaint Held Sufficient.**

2. In an action for deceit in fraudulently inducing plaintiff to buy a relinquishment of a government land entry, complaint *held* to allege sufficiently that defendant's representatons were false, that he knew they were false, or made them recklessly, that he intended them to be acted upon, and that they were acted upon.

**Fraud—Representation as to Relinquishment of Government Land Entry Held Actionable.**

3. Where the filings on government land were a matter of record, and an inspection of the records would have disclosed another filing on land covered by that of M., and that a contest was pending, defendant's assurance to plaintiff that he had investigated the filing at the land office, and that a relinquishment from M. and filing by plaintiff would give a preference right, was either knowingly false or recklessly made.

**Fraud—Immaterial to Whom Plaintiff Paid Money, or Whether Defendant Received Benefit.**

4. Where defendant induced plaintiff, by false representations, to buy a worthless relinquishment of a government land entry, it was

---

1. Action to recover for false representations, see note in 18 **Am. St. Rep.** 555.

2. Necessity and sufficiency of allegation of *scienter* in action for false representations, see note in 16 **Ann. Cas.** 646.

immaterial on the question of liability whether plaintiff paid the money to B. individually or as defendant's agent, or to the party making the filing, or whether defendant had the benefit of the money.

**Appeal and Error—Evidence—Judgment-roll in Action Between Defendant and Third Person Held Inadmissible and Prejudicial.**

5. In an action for deceit in the sale of a relinquishment of a government land entry, where defendant claimed that what he did was out of courtesy to a third person, and on cross-examination denied that he sold any other relinquishments the same year, the judgment-roll, in an action brought against defendant by a third person for damages in a similar transaction, was *res inter alios acta,* and not admissible, even if plaintiff had a right to show by proper testimony that defendant did sell other relinquishments, and its admission was prejudicial.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 1.

This is an action for deceit in fraudulently inducing plaintiff to pay for a relinquishment of a timber and stone entry upon the northeast quarter of section 26, township 21 south, range 3 west of the Willamette Meridian in Lane County. The complaint contains a lengthy detail of the facts leading up to the purchase of the relinquishment, the substance of which is as follows: About November 30, 1919, defendant caused to be inserted in a Portland daily newspaper an advertisement offering for sale certain homestead relinquishments, which advertisement was as follows:

"Two homestead relinquishments for $500 each, 8,000,000 timber on each, close to neighbors, 3 sawmills, and railroad; will bring $10,000 each, soon as patented; it is merit. 405 Merchants Trust Bldg."

Plaintiff, being desirous of procuring a tract of government land, answered the advertisement in person and met the defendant, who informed him that he had the relinquishments for sale and that the parties who had the same had made valid, *bona fide* filings on the land described therein, which filings were upon vacant government land open for settlement,

and that plaintiff by procuring either of them and by filing them with his application to make a homestead entry on land covered by such relinquishment would acquire a prior right to said lands; that the defendant had made the necessary investigation to ascertain the validity and priority of the filings of the parties; that they were in all respects regular, and that the parties holding said relinquishments had by filing on said land acquired a prior right thereto. The complaint continues as follows:

"That plaintiff informed defendant that he, the said plaintiff, was interested in procuring one of the relinquishments, to which the defendant had referred, providing the land covered thereby was as represented by defendant, and the relinquishment would enable him to procure a filing on the land covered thereby, prior to any other claims thereto. Whereupon, defendant informed plaintiff that he, the plaintiff, would be amply protected by relying upon said relinquishment, and directed plaintiff to go to Cottage Grove, Oregon, where he would meet one Warren Beatty, who would show him the land. Defendant further informed plaintiff that the price of said relinquishments was $500 each.

"That the lands covered by said relinquishments were situated in the Roseburg, Oregon, land district, and plaintiff's home was, at that time, at McMinnville, Oregon. Defendant further informed plaintiff that it would be unnecessary for plaintiff to go to the Land Office to look up the records of the Land Office there, regarding the lands covered by said relinquishments, because defendant had made an investigation regarding the same, and that the records showed that the parties owning said relinquishments had a good and subsistent right to the lands covered thereby, which right, according to the defendant, was prior to any and all other rights to said land.

"That defendant informed plaintiff that one of the relinquishments which he had for sale covered the northeast quarter of section twenty-six, township

twenty-one south, range three west, and furnished to plaintiff said description, and advised plaintiff regarding the same as hereinbefore alleged.

"That the representations made by defendant to plaintiff regarding his investigation and the conditions of the records of the land office at Roseburg, Oregon, as to the lands covered by the relinquishments hereinbefore referred to, were made by the defendant for the purpose of having plaintiff rely thereon, and plaintiff did rely thereon, and believed said representations to be true, and relying thereon, and believing said representations to be true, plaintiff did as directed by defendant, and met said Beatty as requested by defendant, and the said Beatty, under the direction of the defendant, showed plaintiff the lands hereinbefore specifically described.

"That said land hereinbefore described was satisfactory to plaintiff. That thereafter and on or about December 16, 1916, plaintiff paid to defendant the sum of $500 for one of the relinquishments referred to by defendant.

"That thereupon an application was made by plaintiff to be permitted to make a homestead entry upon the lands hereinbefore specifically described, which said application, together with the relinquishment for said land, together with fees for filing said application, was sent to the registrar and receiver of the land office at Roseburg, Oregon, for filing.

"That on or about the twentieth day of December, 1916, plaintiff's application for homestead entry on the land above described, together with relinquishment for said land as hereinbefore referred to, were presented to the registrar and receiver at Roseburg, Oregon, for filing.

"That the relinquishment purchased by plaintiff as hereinbefore alleged purported to be the relinquishment of Charles E. Miller.

"That thereafter such proceedings were had and done that the Secretary of the Interior for the General Land Office held that the application filed by the California and Oregon Land Company to acquire the

100 Or.—24

land covered by said relinquishment under the Forest
Reserve Lien Act was prior in time and superior in
right to the filing made by Charles E. Miller, and that
the said Charles E. Miller had acquired no right to
said land, and consequently plaintiff had not, by filing
the relinquishment of said Miller and making an
application for a homestead entry, acquired any right
to said land.

"That plaintiff did not, at any time, make an inves-
tigation of the records of the land office at Roseburg,
Oregon, because of defendant's representations, and
had defendant not made such representations, plain-
tiff would not have paid said $500 or any part thereof
without first investigating the record of the land office
concerning the lands covered by such relinquishment.

"That an investigation of the records at Roseburg,
Oregon, would have disclosed the facts hereinbefore
alleged regarding said Miller's right to said land,
and plaintiff would not have paid said money, had
the facts regarding Miller's right to said land been
known to him.

"That by reason of representations made by de-
fendant, plaintiff has been damaged in the sum of
$500."

The defendant answered, denying generally every
allegation of the complaint, and by way of separate
answer set forth in substance the following:

"That prior to the thirtieth day of November, 1916,
one Warren Beatty, who was a timber cruiser by
occupation, and whom plaintiff had previously known
as such, and who had at various times there-
tofore borrowed small sums of money from the de-
fendant, informed the defendant that he had a home-
stead relinquishment for sale, and that he wanted
to borrow some more money from defendant to ad-
vertise the sale of said homestead relinquishment and
take a trip to Roseburg, and defendant refused to
extend him any further credit, but requested of said
Mr. Beatty that if he give him a description of said
homestead relinquishment so he could satisfy him-
self, before he would loan him any further money;

that said homestead relinquishment was intact, and thereupon said defendant sent a telegram to the receiver of the United States Land Office as follows, to wit:

" 'Receiver U. S. Land Office.
" 'Roseburg, Oregon.

" 'Have the present parties valid filings on the following land, lots 1, 2, 7, 8, section 28, township 21 *south, 2 west,* and northeast quarter of section 26, township 21 *south 3 west.* Wire immediately my expense.'

"That in response to said telegram the defendant received the following message:

" 'L. R. Kaylor,
" 'Portland, Oregon.

" 'Entries have been allowed and are still intact for the land described by your telegram such filing rejected pending on appeal for same land contest, pending against entry for lots one, two, seven and eight, section twenty-eight, twenty-one, two west.'

"That the first telegram contained the description of other real estate besides the real estate involved in this suit, and the first clause of the second telegram is in answer to the inquiry concerning the real estate in question.

"That after defendant had received said telegram he advanced to said Mr. Beatty a further sum of money, and thereafter said Beatty returned to the defendant's office and informed him that he had given the defendant's office as the place to make inquiries, as he would be out of the city.

"Several days thereafter the plaintiff herein called at the defendant's office and made inquiry concerning said advertisement, and defendant then and there informed the plaintiff that said Mr. Beatty had said homestead relinquishment for sale and that he did not know anything about the land or its character, and that Mr. Beatty had gone to Roseburg where he could find him, and showed to the plaintiff at that time the telegram he had sent to the U. S. Land Office at Roseburg, and the answer he had received thereto. And further informed the plaintiff that according to that

telegram the filing was intact, and he saw no reason why he would not obtain a good filing as soon as the relinquishment was filed. That within a day or two thereafter defendant received a telephone call from Mr. Beatty at Roseburg, inquiring as to whether or not there was any response to his advertisement, and defendant informed him that the plaintiff had called and left his address as McMinnville, Oregon, and said Beatty thereupon requested defendant to call the plaintiff by phone and tell him to come to Roseburg, where he would meet him, which defendant did.

"That thereafter said Beatty came to defendant's office and informed him that he had closed a deal and wanted to settle with him for the money he owed him, and thereupon he handed defendant a check for $500, payable to his order, and requested said defendant to put said check through his bank for collection, which he did; that several days thereafter said Beatty called at defendant's office and inquired if said check had been collected at the bank, and requested defendant to give him one check for $275 and one for $47, being the difference of the $500 check and what was due defendant from him for money loaned.

"That defendant did not know the party, nor his name who held the filing on said homestead relinquishment, and had no dealing with him, directly or indirectly, and had no connection whatsoever with said Beatty, or anyone else in this transaction, nor did he receive any money realized out of said transaction, and all defendant had to do with it was, and is as hereinbefore alleged and not otherwise.

"That defendant has not seen or heard from said Beatty for many months, but has heard that he was in the army."

The new matter in the answer was put at issue by a reply. There was a trial to a jury, resulting in a verdict and judgment for plaintiff for $500 and costs, from which defendant appeals.

                    REVERSED AND REMANDED.

For appellant there was a brief and an oral argument by *Mr. L. E. Schmitt.*

For respondent there was a brief over the name of *Messrs. Perkins & Bailey,* with an oral argument by *Mr. J. O. Bailey.*

McBRIDE, J.—There is an objection that the complaint does not state facts sufficient to constitute a cause of action, and for this reason we have given the substance of the pleadings more fully than would otherwise have been required. There was no demurrer, and this being the case, the court after verdict will be slow to hold that there was no issue to be tried, if, taking the complaint by its four corners, it can reasonably be construed to state an issue, even though the statement may be indefinite.

1. In actions of this character the complaint must show: (1) That the representations were false; (2) that the defendant either knew them to be false or made them recklessly as of his own knowledge, without knowing whether they were true or false; (3) that he so made them, intending that the party to whom they were made should act upon them; (4) that the party to whom they were made accepted them as true, and acted upon them to his damage: *Lindstrom* v. *National Life Ins. Co.,* 84 Or. 588 (165 Pac. 675), and cases there cited.

2, 3. As to the first requisite, it appears from a laborious analysis of the whole complaint that the representations were false; that Miller, whose relinquishment plaintiff was buying, did not have a valid filing, but that the California and Oregon Land Company had a filing which was prior in time and superior in right to that of Miller, so that the latter's

relinquishment was worthless to plaintiff and gave him no rights whatever to a valid filing on the land.

Concerning the second requirement, it appears from the complaint that the filings were a matter of record in the land office at Roseburg and that an inspection of those records would have disclosed the fact that the California and Oregon Land Company had a filing upon the land covered by Miller's filing, and that a contest of that filing was pending on appeal before the General Land Office in Washington; so that when defendant assured plaintiff that he had investigated Miller's filing at the Roseburg land office and that a relinquishment from Miller and a filing by plaintiff would give him a preference right to the land, he either stated that which he knew to be false, or recklessly made a statement which was false in fact. That he intended his representations to be acted upon sufficiently appears from the allegation that he informed plaintiff that it would be unnecessary for plaintiff to go to the land office to look up the records, because he had himself made an investigation regarding them which showed that the parties claiming under the filings (Miller's filing being one of those referred to) had a good, subsisting right thereto. That plaintiff acted upon these representations and parted with his money on the strength of them, is sufficiently alleged. Therefore, although the complaint is far from being a specimen of artistic pleading, it does in an indefinite way embody those requisites which courts have held necessary in an action of this character, and in the absence of a demurrer it is sufficient to uphold a verdict.

4. Much of the time of the court was taken up with the question as to who received the money paid by plaintiff for the relinquishment, which was in fact

an immaterial matter, except as it might tend to show the relations of the parties. If plaintiff was induced by the false representations of defendant to buy a worthless relinquishment, it does not make a particle of difference whether he paid the money therefor to Beatty, as defendant's agent, to Beatty individually, or to Miller. Nor is it material whether or not the defendant had the benefit of the money. The wrong committed did not consist in making misrepresentations for defendant's benefit, but in making false representations with intent to induce plaintiff to part with his money to some person; whether that person was defendant or Beatty, is a matter of no consequence. If I lead a blind man into an open well, my tort is no less because the well belongs to somebody else.

"While in a majority of cases defendant has been a gainer by reason of his fraud, it is not essential to his liability that he should obtain any benefit or advantage from the transaction into which he has led plaintiff": 20 Cyc. 43, and cases there cited.

While there was some testimony from which the jury might well have inferred that defendant and Beatty were acting in concert, such proof was not absolutely necessary to a recovery, and a discussion of the question of the admissibility of evidence of Beatty's declarations is unnecessary. There is no evidence that he made any statement to plaintiff as to the validity of the relinquishments or did anything to induce plaintiff to purchase, beyond showing him the land.

5. Several objections were saved by defendant to the rulings of the court on the admission of letters and communications from the General Land Office, which objections we deem not well taken. There is

one objection, however, which we think was well taken, and by reason of which we are reluctantly compelled to send the cause back for another trial. On cross-examination the defendant denied that he caused the advertisement herein quoted to be published or that he knew anything about it, and claimed that it was prepared and published by Beatty. He also claimed that he had not been engaged in the real estate business except to the extent of buying and selling land on his own account, and that he did not advertise any homesteads for sale in 1916. The tenor of his testimony was to the effect that he was not engaged in or familiar with the business of buying and selling homestead relinquishments, and that what he did in the matter of the instant contention was out of courtesy to Beatty. Counsel for plaintiff then asked him if he remembered the case of *Julia Cline* v. *L. R. Kaylor and J. W. Boyer* brought in Multnomah County, wherein the complaint alleged that "L. R. Kaylor on or about the first day of September, 1916, caused to be inserted," etc., reciting an advertisement similar to the one in the case at bar, and stated that he wished to offer it for the purpose of impeaching the witness, to show to the jury that in other instances defendant had caused relinquishment advertisements to be put in the papers, and to show that defendant had been engaged in that business. Counsel for plaintiff then offered the entire judgment-roll in that case, which was one brought for damages upon a transaction similar to this and in which there was a verdict with judgment against both defendants. The judgment-roll was admitted over the objection of counsel for defendant. The question asked the witness, as to whether he had sold other relinquishments in 1916 was collateral or at least only remotely rele-

vant to the main issue, and while counsel had a right to ask it, and perhaps in view of the previous testimony of defendant on direct examination had a right to show by proper testimony that he had in fact sold other relinquishments in 1916, the judgment-roll in *Kline* v. *Kaylor* was inadmissible for that or any other purpose, being *res inter alios acta,* and as to persons not parties to the record being no evidence of any fact involved in the present controversy. Its introduction was highly prejudicial to the defendant. The statement of defendant that he had advertised no relinquishments in 1916 was drawn out on cross-examination and had little relevancy to the controversy as to whether or not he had made false representations to the plaintiff in respect to the instant transaction. The introduction of the judgment-roll in the Cline case simply amounted to an attempt to show that because a jury had found that he made false representations to Mrs. Cline, it was therefore probable that he had been guilty of like representations in the present instance. It is true that counsel for plaintiff ostensibly tendered it for another purpose, but as already shown, the avowed purpose was to impeach the testimony of the witness upon a collateral matter, which the law does not usually encourage. The objections to the instructions of the court are without merit, but for the error in admitting in evidence the judgment-roll in the case of *Cline* v. *Kaylor* we are compelled to reverse this case, which will be remanded to the Circuit Court with directions to grant a new trial.    REVERSED AND REMANDED.

BURNETT, C. J., and JOHNS and HARRIS, JJ., concur.