Argued December 8, reversed December 29, 1960, petition
for rehearing denied January 31, 1961

## CARPENTER *v.* KRANINGER
### 358 P. 2d 263

*David M. Spiegel,* Portland, argued the cause for the appellant. With him on the briefs were Lenske, Spiegel and Spiegel, Portland.

*Martin Schedler,* Portland, argued the cause for the respondent. With him on the brief were Schedler & Moore, Portland.

Before McAllister, Chief Justice, Rossman, Perry, Goodwin and King, Justices.

KING, J. (Pro Tempore)

This action was brought against the defendant for the return of payment made on an earnest money contract.

The third amended complaint consisted of three counts. The amended answer was a general denial, and a further and separate answer and defense alleging, in effect, that plaintiff had violated the earnest money agreement and that defendants were not required nor entitled to return plaintiff's money.

The jury returned a verdict for the plaintiff. Defendant filed a motion for judgment notwithstanding the verdict and a new trial. This motion was denied and defendant brings this appeal.

The defendant was a real estate broker who specialized in the sale of businesses of various types. He conducted his operation under the name of Business Sales Company and his office was located at 7434 N. E. Sandy Boulevard, Portland, Oregon.

On or about May 19, 1956, one C. H. Eastergreen listed a milk pick up route with the defendant for sale.

The principal physical asset of the milk route was a used van type truck. The business consisted of picking up the cans of milk from the various small dairy farms and delivering the milk to the central depot or factory.

The plaintiff conducted a garbage business in Eugene, Oregon which he was in the process of selling. He saw defendant's advertisement of the milk route in the Oregonian and called to inquire about it. In the course of the conversations and dealings the plaintiff and his wife signed an earnest money agreement to purchase the milk route for $8,300 and made a $1,000 down payment. About a week later the plaintiff informed the defendant that he would not go through with the purchase agreement and demanded the return of the $1,000. His general claim was that the business had been misrepresented to him. His request for the return was refused. The basis for the refusal, among other things, was that plaintiff had violated his contract and forfeited the down payment and that defendant was not authorized to return the money by the seller, Mr. Eastergreen.

The second count of plaintiff's third amended complaint alleged fraud in inducing the plaintiff to sign the earnest money agreement and paying the $1,000.

One of the assignments of error is based upon receiving in evidence the testimony of Robert R. Blyth, Assistant Manager of the Portland Better Business Bureau.

We are not enlightened by the evidence what, if any, official status the Portland Better Business Bureau has or exactly how its records are made up or maintained. In fact, the jury and this court were left entirely to surmise, conjecture, guess work or previous understanding as to its duties. In any event, prior to

the witness appearing before the jury, the following statement was made by the defendant to the court in chambers:

"MR. SPIEGEL: If it pleases the Court, at this time we have had a brief recess while counsel obtained a witness from downtown upon short notice. The witness has arrived and we are still in recess and it is my observation from the gentleman seated in the courtroom that he is here to testify that he is a representative of the Better Business Bureau, and that he is apparently to be called to testify whether or not he has any records as to any past transactions or anything made mention of this defendant in his records. I will want to object ahead of time and make known my feeling on it, and that if such is done I would of course object to it and move for a mistrial on the ground that we all know ahead of time what this witness is being called for and his testimony would be irrelevant. There is no punitive damages here; there is no possible showing of a course of conduct involved in the case and it would be wholly immaterial and irrelevant.

"(Whereupon further argument was had.)

"THE COURT: I am going to let the testimony go in.

"MR. SCHEDLER: All right. The testimony is going to be this: He is going to have statements in the records. I am going to have him read those statements and he can testify as to what happened to them, and that would be his testimony.

"THE COURT: Well, all right gentlemen."

Mr. Blyth was then called as a witness by the plaintiff and the following took place:

"BY MR. SCHEDLER:
"Q  Your name is Robert Blyth?
"A  Yes.

"Q And would you state your occupation, please?

"A I am Assistant Manager of the Portland Better Business Bureau.

"Q Do you have a file of complaints on the Business Sales Company?

"MR. SPIEGEL: If the Court please, I object to this as immaterial and irrelevant.

"THE COURT: Objection overruled.

"Q (by Mr. Schedler) Would you answer? Do you have a file on the Business Sales Company?

"A Yes.

"Q Has it been kept in the usual course of business?

"A Yes.

"Q Under your control and supervision?

"A Yes.

"Q Does the file contain any complaints on refusal to refund money after they were obtained by misrepresentation?

"MR. SPIEGEL: If the Court please, I object to this as immaterial and irrelevant. It is wholly irregular to ask such a question.

"MR. SCHEDLER: On the contrary, your Honor.

"MR. SPIEGEL: Do we have this witness be a jury on what he has there?

"MR. SCHEDLER: I think he is qualified on what he has in the file. He can elicit that information as background if he has that. He can read the statement. I think it is clearly proper to lay that foundation for the introduction of his statements.

"MR. SPIEGEL: That question was leading, to say the least.

"THE COURT: The question is leading. Reframe your question.

"Q (by Mr. Schedler) What is contained in your file?

"A A record of three instances where people have reported dealings with the Business Sales Company to the Bureau.

"Q All right. Would you read those statements, please?

"MR. SPIEGEL: If the Court please, that is immaterial and irrelevant what these people said.

"THE COURT: Did you investigate the instance?

"THE WITNESS: No, sir, there wasn't reason to in this case. No, sir, there wasn't reason to in these three cases.

"Q (by Mr. Schedler) For what reason was there no reason to? You say there was no reason to investigate, what do you mean by no reason to investigate?

"MR. SPIEGEL: If the Court please, if there is no reason there was no reason to.

"THE COURT: I would like to know myself why.

"THE WITNESS: Two of them had been just filed. Two of them had already retained attorneys, and therefore, it would be highly improper and unethical to enter into it any further.

"Q (by Mr. Schedler) What was the third one?
"A The third one was one—

"MR. SPIEGEL: If it please the Court, I object, your Honor, as being immaterial and irrelevant. I would like a continuing objection to this man's testimony.

"THE COURT: Let the record show you have a continuing objection to this gentleman's testimony, yes.

"Q (by Mr. Schedler) Would you go ahead?
"A The third one was regarding an out of town sale and it was in 1955.

"Q  Can you people hear?
"You have to speak up.

"A  I have a cold, I am sorry.

"Q  Okay.

"A  This was discussed personally by me with the real estate department. My understanding at that time—

"Q  Would you explain that again?

"A  The one that was called to our attention in 1955 involved a transaction that took place outside of the City of Portland. In fact, the transaction was in Seaside. This was discussed by me with the real estate department and it was requested that we advise the complainant to file the complaint there. The Better Business Bureau does not attempt to duplicate services of State or Government agencies who have licenses and policing powers for certain lines of business, and it was referred to that department.

"Q  All right. You have one from a W. E. Ellingsworth?

"A  Yes.

"Q  What was done with that one?

"MR. SPIEGEL: I object to this witness testifying as to hearsay. If he has Mr. Ellingsworth here and something was wrong, let's have Mr. Ellingsworth.

"MR. SCHEDLER: The Court granted a continuing objection. I think we are entitled at least to proceed with the explanation of what happened to these statements which we started on, your Honor, to elicit it from the witness.

"THE COURT: That is correct.

"MR. SPIEGEL: Very well, your Honor.

"Q  (by Mr. Schedler) Would you answer that question, please?
"A  Would you give me that again?

"Q Yes, sir. What happened to the complaint filed by W. E. Ellingsworth in your file?

"A It was just made a matter of the file record. The statement was signed by Mr. Ellingsworth but he had the complaint in the hands of his attorney and nothing, of course, was done on our part.

"Q That complaint was in the hands of an attorney?

"A That is right; that is the statement.

"Q And that is the reason why Better Business Bureau did nothing of these because two of them were in the hands of attorneys at the time they came in, and one was referred to the real estate department?

"A That is right.

"MR. SCHEDLER: That is all."

The plaintiff was apparently offering this testimony in an attempt to prove knowledge and a fraudulent system by the defendant. He relies on *Union Central Life Ins. Co. v. Kerron*, 128 Or 70, 264 P 453.

In that case, testimony of similar transactions with other persons regarding the plaintiff's methods and practice of making mortgage loans and the charges in connection therewith was received in evidence for the purpose of proving knowledge and a fraudulent system practiced by the plaintiff's agent.

In *Union Central Life Ins. Co. v. Kerron,* supra at 79, this court said:

"It is a general rule of the law of evidence that the law will not consider evidence that a person has committed a certain act at a particular time as probative of a certain contention that he has done a similar act at some other time. However, in litigation based on fraud and deceit, where it is necessary to show knowledge, 'fraudulent acts similar to those charged, and done at or near the same time, may be shown * *. So also, similar acts may

frequently be relevant, because of the light which they throw on questions of motive or intent, or on an issue as to the knowledge of a person.' 22 C.J. 747, 748."

See also 24 Am Jur 109, Fraud and Deceit § 270; 37 CJS 424, Fraud § 113.

In *Jones v. United States*, 258 US 40, 42 S Ct 218, 66 L ed 453, in an action to recover the value of public lands procured by fraud, evidence of similar arrangements between the defendant and other entrymen on similar lands was held admissible in the court's discretion to prove knowledge and intent, if such evidence was not too remote, lengthy or complex collateral issues. McCormick, Evidence 345, § 164; 2 Wigmore, Evidence (3rd ed) 317, § 321.

■ In the case at bar, the above quoted testimony offered and received failed to qualify under the liberal rules of the above cases. They were uninvestigated and unsubstantiated complaints. So far as the record shows they were unverified and not sworn to, and testimony of the witness regarding the complaints was nothing more than hearsay. It was not shown that the alleged similar acts took place on or near the time of the complaint in the case at bar. In fact, in cross-examination the witness said the three complaints were filed with them during the 14 year period from 1945 to 1959 without specifying the exact dates. The only date given on direct examination involved a matter that allegedly took place in 1955.

It is also noticeable that the above evidence was received without limitation or restriction. It was not limited to the fraud counts, and was left with the jury to use as they saw fit without any explanation or

restrictions whatever, either at the time it was received or by later instructions.

It was reversible error to allow the above mentioned testimony to go to the jury, and it could naturally be expected to inflame their minds and prejudice them against the defendant.

The other assignments of error will not be mentioned as the case will be remanded for new trial.

Reversed.