Argued February 4, reversed and remanded March 10, 1971

KARSUN, *Appellant, v.* KELLEY et al,
*Respondents.*

482 P2d 533

*Marvin S. Nepom,* Portland, argued the cause for appellant. With him on the brief was Leo Levenson.

*David W. Harper* and *Alan L. Schneider,* Portland, argued the cause for respondents Stanley E. Kelley and Pacific Industrial Underwriters, Inc. With them on the brief were Keane, Haessler, Harper and Pearlman, Portland, and Merlin Estep and Estep & Daniels, Salem.

TONGUE, J.

This is an action under the Oregon Blue Sky Law (ORS 59.115) by the purchaser of stock to recover the amount of the purchase price from the sellers of the stock. Plaintiff appeals from an order by the trial court setting aside a jury verdict of $3,750, plus $1,085 in attorney's fees, and granting a new trial.

The sole issue on appeal is whether the admission of evidence of other false representations, similar to those alleged to have been made to defendant, but made to two other purchasers of stock at about the same time, was error requiring the granting of a new trial. The pleadings and facts are of importance in deciding this question.

Plaintiff's complaint alleged that defendants sold 1,500 shares of stock of Diagnostic Centers, Inc., to him by means of untrue statements of material facts, including representations that "the prospectus was out of date and should be disregarded" and that "the initial offering of the stock would be closed that weekend." Defendants' answer was a general denial.

Defendant Kelley was the owner of Pacific Industrial Underwriters, Inc., which handled "new issues only." On June 1, 1968, he made a business call upon plaintiff at his home. Plaintiff testified that Mr. Kelley told him about the operations of Diagnostic Centers, Inc., a new Oregon corporation, and represented to him that the prospectus for the corporation was not only out of date, but should be disregarded because the company "had turned the corner and was operating in the black," contrary to the prospectus. He also testified that Kelley represented that plaintiff was very fortunate to be able to get the stock because the offering of the stock was "definitely being closed" that week end, with the result that there would then be no more stock available. In reliance upon these and other representations plaintiff said that he purchased 600 shares of the stock at $2.50 per share, for a total of $1,500. Plaintiff also testified that five days later, on June 6th, defendant Kelley called him again and told him that there was still a limited amount of the stock available and that the company was then in the process of negotiations with a "big chain" to install its products. In reliance on these representations plaintiff said that he purchased 900 additional shares, for $2,250.

Plaintiff also offered evidence that these representations were not true in that the corporation was not then operating at a profit and over 25% of the stock was still unsold. Later the price of the stock went down to as low as 15¢ per share.

In addition, plaintiff offered the testimony of two witnesses that at about the same time defendant Kelley made substantially the same representations to them. Defendants objected to such testimony as irrelevant to any issue in the case and as "inherently

prejudicial." In support of that objection defendants contended that in an action under ORS 59.115 plaintiff was not required to prove knowledge by defendants that representations made by them were false. Defendants also contended that while such evidence might have been admissible if defendants had alleged as an affirmative defense that they had no knowledge that representations made by them were not true, as provided by ORS 59.115 (1)(b), defendants had made no such allegations in their answer and made no such contention on trial. Instead, defendants simply denied that they made the alleged representations and contended that all statements made to plaintiff were true. As a result, defendants contended that "scienter," or knowledge, was not an issue in the case, so as to make such evidence admissible on that issue.

On the contrary, plaintiff contended on trial that such testimony was relevant and admissible on several grounds, including the following: (1) As evidence that the representations were made by defendants with knowledge that they were false, for the reason that even if the "real issue" was whether the representations were made and whether they were false, the jury was "entitled to know" whether defendants *knew* that they were false; (2) As evidence that such statements were made as a part of a plan, design or scheme to promote the sale of the stock; and (3) As evidence that the alleged statements were representations of material facts, as alleged by plaintiff, but denied by defendants.

After considering these opposing contentions the trial judge overruled defendants' objections, but twice cautioned the jury that the testimony of these witnesses that similar representations had been made to them by defendant Kelley was not to be considered

as proof that any representations made by Kelley to plaintiff were untrue, but only upon the limited question, whether, if false representations were made to plaintiff, they were made by Kelley with knowledge of their falsity. Later, however, the trial judge granted defendants' motion for new trial upon the ground that such evidence was improperly admitted and was highly prejudicial despite such "limiting" instructions to the jury.

1. *Evidence of Other Representations Was Not Admissible to Prove Knowledge Because That Issue Has Been Removed From the Case.*

In considering plaintiff's contention that the trial court erred in granting a new trial on this ground we start with the well-recognized general rule that evidence that a person performed a certain act at a particular time is not ordinarily admissible to prove that he performed a similar act at some other time. *Carpenter v. Kraninger*, 225 Or 594, 601, 358 P2d 263 (1961). Thus, it is generally held that in an action for fraud evidence of misrepresentations made by defendant to other persons is not ordinarily admissible as evidence that misrepresentations were made by defendant to plaintiff. *Boord v. Kaylor*, 100 Or 366, 377, 197 P 296 (1921).

It has been held by this court, however, that in an action for fraud similar fraudulent representations to other persons may be admissible upon the issue of defendants' intent, motive or "scienter"; i.e., knowledge that the representations were false. *Carpenter v. Kraninger, supra*, at 601, and cases cited therein. This brings us to the question whether "scienter," or knowledge, is a proper issue in an ac-

tion under ORS 59.115 and, if so, whether it was an issue in this case.

■ In 1967 the Oregon Blue Sky Law was amended by ORS 59.115 (1) (b) to adopt substantially the same terms as set forth in the Federal Security Act of 1933, 15 USCA § 77 (1) (2). Thus, the legislative history of that act, as well as decisions construing its provisions, are of significant interest.[1]

Although the purpose of the federal act was to "broaden" the law of deceit, Congress did not go so far as to provide, as in a suit for rescission, that the purchaser of securities can demand the return of the purchase price upon proof of any material misrepresentation, regardless of intent, motive, or "scienter." Instead, and as a concession to the sellers of securities, it was provided in § 77 (1) (2), and also in ORS 59.115 (1) (b), that a seller of securities who makes a false representation to a purchaser is not liable for return of the purchase price if he can "sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth" of the representation.[2]

■ Thus, knowledge that a misrepresentation was or was not false may still be an issue in an action

---

[1] See 3 Loss, Securities Regulations (2d ed) 1643; Shulman, "Civil Liability and the Securities Act," 43 Yale L J 227 (1933).

[2] As stated in 3 Loss, Securities Regulations (2d ed) 1704:
"Obviously having in mind common law deceit rather than rescission, the House Committee report on the bill which became the Securities Act justifies this 'shift in the burden of proof' as both just and necessary, inasmuch as the knowledge of the seller as to any flaw in his selling statements or the failure of the seller to exercise reasonable care are matters in regard to which the seller may readily testify, but in regard to which the buyer is seldom in a position to give convincing proof."
See also Wilko v. Swan, 346 US 427, 431, 74 S Ct 182, 98 L ed 168 (1953).

under ORS 59.115 and in such an action evidence of false statements by the defendants to other persons may be admissible on that issue. In this case, however, defendants not only did not plead lack of such knowledge as an affirmative defense, but before evidence of similar misrepresentations to the two other witnesses was offered in evidence, defendants made it clear upon the record that they made no contention that if any misrepresentations were made by defendant Kelley he did not know of their falsity, but that defendants' sole contention was that they made no false representations to plaintiff.

This, in our view, completely removed from the case the possible issue of "scienter" or knowledge of the falsity of the alleged misrepresentations and, as a result, also removed that ground as a basis for the admissibility of the testimony of these two witnesses. It follows that it was error to receive such testimony unless it was properly admissible on some other basis.

2. *Evidence of Representations to Other Persons May Be Admissible To Show A Larger or Continuing Plan or Design.*

■ Defendants acknowledge that evidence of other acts or representations may be admissible to show a continuing plan or scheme, as an exception to the general rule excluding such evidence. Defendants contend, however, that this exception "is applicable only to cases of fraud" in which "the pleadings allege a plan or scheme to defraud," citing *Union Central Life Insurance Co. v. Kerron*, 128 Or 70, 79-80, 264 P 453 (1928), and McCormick on Evidence § 164 (2). Defendant also contends that, in any event, this exception "does not permit the introduction of evidence of

similar representations for the purpose of showing that other representations were in fact made," but only to show intent, motive or knowledge, which was not in issue in this case, citing *May v. Roberts*, 126 Wash 645, 219 P 55, 57-8 (1923).

■ It is true that *Union Central Life Insurance Co. v. Kerron, supra*, while not an action for fraud, was a foreclosure suit in which defendant pleaded fraud as a defense. That decision, however, did not limit evidence of other fraudulent acts in fraud cases to the issue of motive, intent or knowledge, as distinguished from evidence offered to establish the performance of the fraudulent act in issue, as in this case. Also, that decision did not limit such evidence to cases in which a plan or design to defraud had been pleaded, as in a conspiracy case. On the contrary, no such design or plan was pleaded in that case and this court, after recognizing that such evidence may be admissible to show motive or intent, went on to state, at pp 79-80:

> "In treating of the subject of relevant evidence *to establish a fraudulent act* by another similar act, 6 Ency. of Ev., page 35, says that evidence of such other similar fraudulent acts has often been held competent to prove a system of fraud." (Emphasis added)

According to McCormick on Evidence § 164, also cited by defendant, the exception relating to evidence of other representations to show knowledge or intent is treated as one which is separate and distinct from the offer of such testimony as probative evidence that the representations in issue were in fact made. Thus, it is stated by McCormick, at p 346:

> "If the actual making of the misrepresentations charged in the suit is at issue, then to show

the party's *conduct* in making the representations or committing the other acts of fraud as alleged, it is competent to prove other representations *closely similar* in purport or other fraudulent acts, when they may be found to be *parts of a larger or continuing plan or design,* of which the acts or misrepresentations in suit may also be found to be an intended part or object." (Emphasis added)

After citing cases in support of this statement McCormick then adds, also at p 346, note 4:

"Courts often seem to overlook the availability of this theory of admissibility * * *."

The rationale for such a rule is stated as follows in 2 Wigmore on Evidence 202, § 304:

"When the very doing of the act charged is still to be proved, one of the evidential facts receivable is the person's Design or Plan to do it * * *. This in turn may be evidenced by conduct of sundry sorts * * * as well as by direct assertions of the design * * * But where the conduct offered consists merely in the doing of other similar acts, it is obvious that something more is required than that (of) mere similarity * * *.

"The added element, then, must be, not merely a similarity in the results, but *such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.*"

Substantially the same rule is recognized in criminal cases as one of the exceptions to the general rule that evidence of other crimes is inadmissible. See 1 Underhill's Criminal Evidence (5th ed) 502, § 212.

Despite some confusion and conflict in the cases on this question, the courts have applied such a rule in numerous cases, including the following: *Albrecht*

*v. Rathai*, 150 Minn 256, 185 NW 259, 261 (1921), an action on promissory note, with defense that note procured by fraudulent representations—evidence of other similar fraudulent acts held admissible, not only to show intent, but as substantive proof of fraud by showing a scheme to defraud; *Mudsill Min. Co. v. Watrous*, 61 F 163, 171-184 (6th Cir 1894), a suit to rescind sale of mine for "salting" ore samples —evidence of previous "salting" incidents admitted; *Altman v. Ozdoba*, 237 NY 218, 142 NE 591, 592-3 (1923), an action on promissory note with defense that note was forgery—evidence of other forgeries admitted; *Shingleton Bros. v. Lasure*, 122 W Va 1, 6 SE2d 252 (1939), an action to collect account based on credit secured by false representations—evidence of other misrepresentations admitted. None of these cases required that such a scheme or plan must be pleaded, as in a conspiracy case.[9]

Although this court has never ruled directly upon this question, the adoption of such a rule is not only supported by our previous decision in *Union Central Life Insurance Co. v. Kerron, supra*, as quoted above, but is also consistent with our decision in other cases. Thus, in *State v. Kristich*, 226 Or 240, 246, 359 P2d 1106 (1961), evidence of other acts was held admissible "to prove the existence of a larger continuing plan [or] scheme," quoting from McCormick, *supra*, although that case involved a charge of

---

[9] It is true that in May v. Roberts, *supra*, cited by defendants, the Washington court held to the contrary. That decision, however, is criticized by Wigmore, *supra*, 226, § 321, n 1, as one which would "read out of the law the entire doctrine of design or plan * * *."

As for defendants' concern over the possibility of unfair surprise, it would appear that available discovery procedures should provide sufficient protection.

rape and was thus subject to a separate exception sometimes recognized in such cases. Also, in *State v. Long*, 195 Or 81, 114, 244 P2d 1033 (1952), involving a charge of murder, Underhill's Criminal Evidence, *supra*, was quoted to the same effect. And in *Boord v. Kaylor*, 100 Or 366, 197 P 296 (1921), it was held (at p 376) that testimony to show other fraudulent acts of the same nature was admissible, although "collateral" and only "remotely relevant." Similarly, while not directly in point, it was held in *Kelty v. Fisher*, 101 Or 110, 118-9, 199 P 188 (1921), a malpractice case, that evidence of another almost identical act by defendant on another patient with the same illness and in the same hospital room was relevant and admissible for the reason that such evidence had probative value on the question whether the act of malpractice involving plaintiff's decedent was done, as alleged.[4]

---

[4] Defendant cites our previous decision in *Menefee v. Blitz*, 181 Or 100, 179 P2d 550 (1947), as holding (at p 128) that evidence of representations to other persons was inadmissible where "there was no issue at the trial concerning intent or motive." In that case, however, the testimony of other representations was not offered as evidence of a continuing plan or design, but to show that such statements were later "relayed" to the plaintiff. Also, the primary issue in that case was whether the statements made by defendant to plaintiff were true or false, not whether such statements were made at all, so as to render admissible similar statements to show a continuing design or plan. (See 181 Or at 128)

Carpenter v. Kraninger, 225 Or 594, 358 P2d 263 (1960), also cited by defendant, is also not controlling. In that case, while quoting the general rule excluding evidence of other misrepresentations, the court held no more than that evidence of three hearsay and "unsubstantiated" complaints during a period of 14 years, when offered to show knowledge or intent, was not sufficient to "show(n) that the alleged similar acts took place on or near the time of the complaint in the case at bar." (See 225 Or at 602)

Defendants' final contention in this case is that:

"Since this was not a fraud case in which there was an issue concerning respondents' scienter or conduct, it was prejudicial error to permit the introduction of testimony concerning similar statements allegedly made by respondent Kelley to other persons at other times."

Such a contention involves two basic misconceptions.

First, while an action by the purchaser of stock under ORS 59.115 is not a common law action for fraud, the primary basis for such an action is fraud. *Ouachita Industries, Inc. v. B. F. Willingham et al*, 179 F Supp 493, 505 (WD Ark 1959), and 3 Loss, Securities Regulations (2d ed) 1704. Also, this court has expressly held that the Oregon Blue Sky Law is to be construed "to afford the greatest possible protection to the public." *Spears v. Lawrence Securities, Inc.*, 239 Or 583, 587, 399 P2d 348 (1965).

Furthermore, as held by the foregoing authorities, even in cases in which there is no issue of "scienter," but in which the issue is one of "conduct," as in this case, evidence of other similar conduct may be admissible on that issue if there is "such a concurrence of common features that the various acts are naturally explained as caused by a general plan of which they are the individual manifestations" (2 Wigmore, *supra*, 202). Thus, it remains to consider whether the evidence of other representations, as offered in this case, satisfies this test.

In this case, aside from the testimony of representations that the prospectus was out of date and to be disregarded, plaintiff testified that defendant Kelley represented to him that the direct sale of the

stock was "definitely being closed"; that there was only a limited amount of the stock still available and that plaintiff would be "fortunate" to be able to get some of it. He testified that these representations were made to him on June 1, 1968, and June 6, 1968.

The representations by Kelley to the two witnesses offered by plaintiff, as testified by them, were strikingly similar. Thus, they both testified that at "about the same time in June of 1968" Kelley also represented to them that "the issues were almost sold out and he had a few left"; that "if we wanted some we should talk to him that night"; that "if there was a possibility that it wasn't sold out at that time that we could get in on it," and that "we were pretty lucky in getting in on it."

In our judgment, such representations, as made to these two witnesses, according to their testimony, when compared with those testified to by plaintiff, also on two separate occasions, demonstrates "such a concurrence of common features" so as to lead to the conclusion that "the various acts are naturally explained as caused by a general plan of which they are the individual manifestations," within the meaning of the test as stated in 2 Wigmore, *supra*, at 202.[9]

█ It follows that the testimony of such representations by these two witnesses was admissible on the issue whether defendant Kelley made the representations testified to by plaintiff and denied by

---

[9] Defendants complain that they had no opportunity to object to plaintiff's failure "to lay a foundation for its admission as part of a continuing plan or scheme." Since, however, that was one of the grounds on which the evidence was offered on trial, defendants were not denied that opportunity. In any event, by satisfying the foregoing test any such foundation requirements were likewise satisfied.

Kelley. Defendants' primary contention, that the admission of such evidence was prejudicial to them for the reason that it was "not admissible to prove he has made similar representations" to plaintiff, thus has no merit under the facts and circumstances of this case. It also follows that defendants were not prejudiced by the admission of that evidence under limiting instructions which were more favorable to defendants than they were entitled to request.[©]

For all of these reasons we hold that the jury verdict in favor of plaintiff, which resolved this issue of fact, was a proper verdict and should be reinstated.

Reversed and remanded.

---

[©] In view of this disposition of the case it is not necessary to consider plaintiff's further contention that evidence of similar representations to other purchasers of stock was also admissible on the issue whether such representations were *material*, as alleged by plaintiff's complaint and denied by defendants' answer.