Argued November 7, affirmed November 28, 1962

# STATE OF OREGON *v.* FISCHER
## 376 P. 2d 418

*John O. Sheldahl,* Oregon City, argued the cause for appellant. On the brief were Sheldahl & Misko, Oregon City.

*William E. Schumaker,* District Attorney, argued the cause and filed a brief for respondent.

Before MCALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and DENECKE, Justices.

GOODWIN, J.

A jury found Margaret Arnell Fischer guilty of

manslaughter in the death of her husband by gunshot wound. She appeals from the resulting judgment.

The first assignment of error concerns the introduction into evidence of certain oral and written statements the defendant had given to the police. She contends that the state had not adequately proven the *corpus delicti* prior to the introduction of these statements; she then says that it was prejudicial error to receive them. The contentions are based on the defendant's understanding of ORS 136.540 (1), which reads in part: "nor is a confession only sufficient to warrant his conviction without some other proof that the crime has been committed." The statements which were introduced were confessions within the meaning of ORS 136.540 (1). *State v. Weston,* 102 Or 102, 113, 201 P 1083.

■■ The assignment of error appears to challenge only the order of proof. If we take the assignment literally, it is a contention that the court somehow failed to observe the general rule that the state should prove the *corpus delicti* before it proceeds with any evidence of a confession. The order of proof is within the sound discretion of the trial court. *State v. Weston,* supra. There is no need in this case to question the court's exercise of its discretion, for the confessions were not introduced until after the state had produced all of its other evidence. The assignment of error is, if taken literally, wholly without merit.

■ Treating the assignment of error as if it were a challenge to the sufficiency of the proof of *corpus delicti,* which was, no doubt, the defendant's intent, there was still no error. Proof of the *corpus delicti* in a homicide case requires proof that the death of a human being was caused by the criminal conduct of another. *State v. Weston,* supra. Such proof may rest

wholly upon circumstantial evidence. *State v. Williams,* 46 Or 287, 297, 80 P 655. It is not necessary that the state prove its case beyond a reasonable doubt independently of the confessions. *State v. Wilkins,* 72 Or 77, 142 P 589. The weight of the evidence is for the jury. It is sufficient if the independent evidence on the issues of death and criminal agency makes out a question for the jury. *State v. Bodi,* 223 Or 486, 492, 354 P2d 831 (1960); 3 Wigmore, Evidence 404, § 2073. Cf. *State v. Watts,* 208 Or 407, 301 P2d 1035 (1956), where there was virtually no proof of the commission of a crime.

■ The sole issue in this case on the sufficiency of proof of *corpus delicti* concerns the element of criminal agency. If the independent evidence did not give the jury a foundation upon which it could find that death was caused by a criminal act, then the state was not entitled to use the defendant's confessions. *State v. Bodi,* supra.

From the independent circumstantial evidence in this case, the jury could have found the following to be the facts:

(1) The deceased was killed by a bullet from a .22 caliber pistol.

(2) The pistol that fired the bullet was found by the police underneath the mattress where the defendant slept.

(3) The death occurred on October 8, 1961, between the hours of 7:45 and 11:45 p.m., and was discovered by a third party shortly after 3:20 p.m. on October 9, 1961, when the defendant telephoned a friend and asked her to come to defendant's house.

(4) The house where deceased was found was locked and no one entered or left the house between

the time of the decedent's death and the discovery thereof by others some sixteen or more hours later.

(5) Defendant was in the house alone with deceased before and after the death of the deceased for some sixteen or more hours without calling for help or otherwise making the events known.

The foregoing facts were sufficient to permit a jury to draw an inference that death was caused by an agency other than suicide or accident. The probabilities under the facts outlined could be, and no doubt were, debated before the jury. It was the jury's duty to weigh the probabilities. Viewing the matter most favorably to the defendant, there was a jury question on criminal agency. No error can be found in connection with *corpus delicti.*

■ Defendant also assigns error to the denial by the trial court of a motion to dismiss the indictment and to the denial by the trial court of a motion for a directed verdict of acquittal. Both assignments are without merit. We have already seen that there was sufficient independent evidence of the *corpus delicti* to go to the jury. Added thereto was the defendant's confession. She said that following a brief struggle with her husband she wrested the gun from his possession, stepped back and fired. That is at least manslaughter, in the absence of facts making the homicide justifiable. There was no error in denying defendant's motions. Testimony concerning self-defense was for the jury to consider. It apparently chose not to believe the defendant.

The defendant further contends that it was error to refuse to strike the testimony on rebuttal of Sheriff Shobe. On redirect examination the defendant had been asked if the written statement which she had

given the police and which was then in evidence contained her exact words. She replied that it did not. She specifically denied making the remark that "I don't remember whether I cocked the gun or not, but I just backed up and shot." Instead she claimed that the words were those of Deputy Sheriff Wampler. The state, in rebuttal, called witness Shobe, who testified that on the day following her arrest the defendant had told him that she "had wrestled the gun away from her husband, stepped back and pulled the trigger and fired." Defendant now contends that since this could have been part of the state's evidence-in-chief, it could not have been proper rebuttal. The state points out that the contention is a *non sequitur*. The state says that Shobe's testimony was made necessary by the defendant's testimony that Wampler rather than the defendant was the author of the statement.

■■ This court has recognized that in some circumstances it may be prejudicial error to allow evidence in rebuttal when the evidence should have been part of the state's case-in-chief. *State v. Minnick*, 54 Or 86, 94, 102 P 605 (1909); *State of Oregon v. Hunsaker*, 16 Or 497, 19 P 605 (1888). The evidence introduced by the state through the witness Shobe could indeed have been used as a part of the state's case-in-chief. It would have been cumulative, but it was relevant. It does not follow, however, that the same evidence could not also be used in rebuttal when it became material to contradict the defendant's own testimony. Rebuttal testimony should be limited to evidence made necessary by the opponent's evidence. It is within the sound discretion of the trial court to allow in rebuttal testimony which becomes relevant in rebuttal even though it might have been used in the case-in-chief. *Stam v. Salles et al*, 223 Or 518, 519, 355 P2d 93

(1960) ; *Stowell v. Hall*, 56 Or 256, 261, 108 P 182 (1910) ; 3 Wigmore, Evidence 510, § 1873. There was no abuse of discretion in the case at bar. The testimony of Shobe, had it been used in the case-in-chief, would have been cumulative if used merely to prove that the defendant had made a voluntary confession. There was testimony of three other witnesses who all swore that the typewritten statement was in the words of the defendant. Shobe's testimony, however, became relevant on another point when it was used to contradict the defendant's assertion that some other person had put in her mouth the words attributed to her. Cf. *State v. Hattrem*, 140 Or 371, 382, 13 P2d 618 (1932). The state had no reason to suspect during its case-in-chief that the defendant would disclaim the authorship of her signed statement. The purpose of the general rule against using in rebuttal testimony that should have been used in chief is to prevent surprise or other unfair tactics. When a party opens up a new matter as a special point of inquiry, the reason for the rule evaporates and the testimony may be used to meet the new assertion.

■ The final assignment of error concerns the failure of the trial court to give the following instruction:

"The court instructs the jury that, where a statement of the prisoner charged with a crime is offered in evidence, the whole of the statement so offered and testified to must be taken together, as well that part which makes in favor of the accused as that part which makes against him; and if the part of the statement which is in favor of the defendant is not disproved by other testimony, and is not improbable or untrue, considered in connection with all the other testimony of the case, then that part of the statement is entitled to as much consideration from the jury as the parts which make against the defendant."

It might be noted that the substance of the foregoing instruction, while criticized in *State v. Ausplund,* 86 Or 121, 128, 167 P 1019 (1917), was approved in *State v. Bouse,* 199 Or 676, 697, 264 P2d 800 (1953). The instruction does not employ the clearest wording that could be chosen to convey to the jury the need to consider an admission as a whole, and upon analysis, it comes very close to being a comment upon the weight to be given a fragment of the evidence. Insofar as the *Bouse* case has been understood to make the quoted instruction mandatory, it should be considered overruled.

During the trial of *State v. Bouse,* supra, certain oral statements made by the defendant were introduced by the state. Those statements contained mitigating matter as well as incriminating matter. In denying a motion for a new trial, the trial court was recorded as saying that the mitigating portion of the statements could not be considered as proving matter in mitigation, but only as proving that the statements had been made. This court reversed, holding that the weight to be attributed to such remarks was entirely a matter for the jury. In that case it was particularly important that the jury be allowed to consider mitigating testimony, because the charge was first-degree murder and it was the duty of the jury to set the penalty.

Assuming that the substance of the requested instruction could have been given in this case, it was not reversible error to refuse to give it. Other instructions made it clear that the jury was to consider the evidence as a whole. The error in the *Bouse* case was in the trial court's ruling that the mitigating portion of the defendant's statement could not be considered by the jury. There was no such ruling in the instant

case. The statements of defendant in the case at bar were introduced as a whole. We have no reason to believe the jury did not consider each of them as a whole. The jury was instructed to regard the declarations and admissions of the defendant with caution, because of the danger that a mistake could be made in receiving, recording and transmitting such statements. No other instruction was specifically directed to the statements of defendant. There is nothing in the record, however, which would indicate that the defendant was prejudiced by the failure of the court specifically to point out to the jury that they could consider her statements both for her and against her. The oral statements admitted the killing but described it in terms of self-defense. The written statement was in the jury room and spoke for itself. It, likewise, described the killing as an act of self-defense. The jury was fully instructed on the issue of self-defense in a manner favorable to the defendant. The instructions as a whole were fair to the defendant and covered every issue in the case. Cf. *State v. Trent*, 122 Or 444, 461, 252 P 975, 259 P 893 (1927).

Affirmed.