Argued February 8, affirmed March 13, 1963

# FREEDMAN *v.* CHOLICK ET UX
### 379 P. 2d 575

*Paul R. Meyer,* Portland, argued the cause for appellant. With him on the briefs were Kobin & Meyer, Portland.

*Thomas J. Moore,* Portland, argued the cause for respondents and cross-appellants. With him on the briefs were Schedler & Moore, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, SLOAN, GOODWIN and LUSK, Justices.

GOODWIN, J.

This is an action for damages for breach of contract.

Plaintiff paid defendant $250 for an option to buy a corner lot in downtown Portland for $115,000. Plaintiff in due course elected to exercise the option. Defendant was unable to deliver possession. This action followed. Plaintiff demanded in damages the difference between $115,000 and $132,000, the alleged market value of the property at the time he exercised the option. He also demanded $250 as return of his consideration for the option and $320 as lost interest on purchase money deposited in escrow by plaintiff. The

jury found for plaintiff but awarded him only $570 in damages. Plaintiff appeals, and assigns error to certain rulings upon the evidence.

Expert witnesses testified in plaintiff's case-in-chief that the market value of the land and its improvement (a parking-garage) was between $130,000 and $132,000 at the critical time. Plaintiff's witnesses swore the building could be remodeled and used as an office building. In defendant's case, his value witness testified that the land as improved was worth only $100,000. Defendant's witness gave the building virtually no value. The value of the improvement thus became the central issue before the jury.

The defendant's value witness stated that in his opinion the garage building could not economically be converted into a commercial office building. He conceded on cross examination that it was technically possible so to remodel. However, it was his conclusion that the building did not enhance the present market value of the land. He said that in order to develop the land to its highest and best use it would be better, in his opinion, to demolish the existing building. He acknowledged that he had based his opinion, in part at least, upon an assumption that the building was brick rather than brick facing on reinforced concrete. Plaintiff's witnesses earlier had sworn that the building was concrete with brick facing and trim.

In rebuttal the plaintiff asked a contractor whether the existing improvement could be converted into a modern office building. The answer was affirmative. The plaintiff then asked the contractor the cost of such conversion. This evidence was excluded. The plaintiff then made an offer of proof, and combined in his offer of proof the contractor's testimony (a) that the building could be remodeled and (b) the cost

thereof. Another offer of proof consisted of the testimony of a property-management expert concerning the earnings which could be expected from a modern office building on the site in dispute. By its various rulings, the court sustained objections to all of this proffered testimony. Plaintiff has assigned error to these rulings.

■■ In general, rebuttal testimony will be excluded except for that made necessary by the opponent's case-in-chief. *State v. Fischer*, 232 Or 558, 376 P2d 418 (1962); 6 Wigmore, Evidence (3d ed) 510, § 1873. Whether such evidence is necessary is ordinarily a matter of discretion. *Parmentier v. Ransom*, 179 Or 17, 22, 169 P2d 883 (1946).

■ Normally, where the vendor breaches his contract to sell land, the vendee may recover the difference between the market value of the land at the time it should have been conveyed and the contract price. *Crahane et al v. Swan*, 212 Or 143, 156, 318 P2d 942 (1957); McCormick, Damages 680, § 177. Present market value obviously includes the value of existing improvements on the land; e.g., *Public Market Co. v. Portland*, 179 Or 367, 170 P2d 586 (1946), cert. den. 330 US 829, 67 S Ct 861, 91 L Ed 1278 (1947); *City of Los Angeles v. Klinker*, 219 Cal 198, 211, 25 P2d 826, 90 ALR 148; 2 Orgel, Valuation under Eminent Domain 4, § 189. The quest for present market value also makes relevant an inquiry into the possible future uses of the land (within limitations not in issue here). *Boom Co. v. Patterson*, 98 US 403, 408, 25 L Ed 206 (1878); 1 Sedgwick, Damages (9th ed) 510, § 253; 1 Orgel, Valuation under Eminent Domain, §§ 29-31. This inquiry is usually referred to as a search for the highest and best use of the land.

In the case at bar, the jury had heard plaintiff's

value witness swear that the existing building was a valuable asset. The jury had also heard the defendant's witness say that he considered the building to be of little or no value. He reached a figure $30,000 lower than that of the plaintiff's witness because he thought the building ought to be torn down. There was, then, a conflict in the testimony of the two real-estate appraisers. Plaintiff sought to rebut the defendant's expert by asking two other kinds of experts (a builder and a rental manager) to swear that there was a valuable building on the land.

Plaintiff relies upon *State Highway Com'n v. Deal et al*, 191 Or 661, 233 P2d 242 (1951), as authority that his proferred testimony was admissible in rebuttal. In the *Deal* case, the state's witnesses had sworn in the state's case-in-chief that the land taken could not be used for subdivision purposes. The point then under inquiry was the highest and best use of certain ocean-frontage land. During the owner's case-in-chief, he put in evidence to show that the best use of the property would be for subdivision purposes. The state objected when the owner then offered to prove how the land could be subdivided into lots, and when he sought to show the price for which the lots could be sold. The state argued, correctly, that this evidence was speculative. We held, however, that although the evidence normally would have been inadmissible as too speculative, it had become admissible in that case for a limited purpose. The state had opened up the collateral question of the cost of improvements and whether these costs could be recaptured in the selling price of the lots. We held that the defendant was thus entitled to meet the state's evidence with his own evidence that the lots could be sold. The testimony was admissible solely to prove that subdivision was feas-

ible, and then only because the state had opened the inquiry.

In the case at bar, there is no dispute about the highest and best use of the land. Both parties agree that such use would be for a modern office building. Further, with reference to the value of the existing building and its future usefulness, it is clear that when plaintiff's witnesses testified to the market value of the property as a whole they took into account the value of the existing building as the start of a remodeled office building. Thus, when the rebuttal evidence was offered, the jury already had before it two different figures on market value, two extended explanations of how the figures had been reached, and two conflicting views on the feasibility of adapting the existing building.

The *Deal* case might give some support to the plaintiff's position in the case at bar if in the *Deal* case the trial court had permitted the state to come back in rebuttal with proof that the lots could not be sold at the prices sworn to by the owner. That matter, however, was never presented, and we had no occasion to pass upon it. In any event, we have been cited to no authority that would require a court to receive such evidence.

■ That portion of the proffered testimony which the plaintiff sought to elicit from the building contractor, i.e., that the existing building could be remodeled, was cumulative. Testimony on that score had been placed before the jury in the plaintiff's case-in-chief. While there would have been no reversible error in receiving cumulative testimony on rebuttal, neither would there be error in excluding it. The matter is discretionary. The portion of the testimony which plaintiff sought to elicit from the property manager was not

cumulative, since it had not been touched upon before, but was so speculative, and opened up inquiry into so many collateral matters, that its relevance was outweighed by its diversionary effect. Testimony concerning rentals to be earned from a future building had not been made admissible by the mere statement of the owner's expert that he did not consider remodeling to be economically feasible. In the exercise of sound judicial discretion, the trial court properly excluded the plaintiff's offer of proof as containing only remotely relevant evidence, the probative value of which was not sufficient to overcome its essentially speculative nature.

Plaintiff urges another ground for reversal. Plaintiff notes that the defendant's expert had relied on a supposed fact that the building was of brick. Plaintiff's witness, however, had already testified that the building was made of steel-reinforced concrete. Plaintiff then cites cases for the proposition that it is for the jury to determine whether the facts upon which an expert bases his opinion actually exist. *Panko v. Grimes,* 40 NJ Super 588, 596, 123 A2d 799 (1956); *Thompson v. City of Bushnell,* 348 Ill App 395, 109 NE2d 346 (1952). Those cases indeed support the proposition, which is unchallenged here. However, as the jury could have determined without any rebuttal that the facts upon which the defendant's expert's opinion was based were other than he thought them to be, it could have decided that his opinion was entitled to no weight. Oral argument, rather than cumulative evidence, is the method for dealing with this sort of situation.

■ Even if we assume, however, that there would have been no error, as such, in permitting the plaintiff to contradict the defendant's witness by showing once

again on rebuttal the true nature of the construction, the plaintiff's offer of proof went far beyond such a modest redundancy. As noted, plaintiff sought also to prove the costs and income-potential of a proposed office building, complete with air-conditioning and rent-paying tenants. The latter testimony was inadmissible under any theory. *State Highway Com'n v. Deal et al,* supra. As noted in *Smith v. White,* 231 Or 425, 372 P2d 483 (1962), if an offer of evidence contains within it evidence that is inadmissible commingled with evidence that is admissible, it is no error to exclude the entire offer. The good falls with the bad. In the case at bar there was no error in excluding the offers of proof.

■ Plaintiff's final assignment of error which we will notice challenges the refusal of the court to let plaintiff testify as his own witness on the value of the land. He claims that by exercising his option to buy the land he became equitable owner of the land and was, therefore, entitled to testify concerning value as an owner under the rule of *Hanns v. Friedly,* 181 Or 631, 641, 184 P2d 855 (1947). Plaintiff seeks comfort in noting that defendant was only an equitable owner himself (buying on a contract), but had been allowed to testify. The record reveals no objection to the defendant's value testimony, so the propriety of letting him testify is not before us. The defendant did object, however, when the plaintiff offered to testify on value. Plaintiff now says that the resulting inequality of opportunity to testify was prejudicial to him.

The reason for the rule which permits a nonexpert owner to testify to value is the supposed familiarity an owner-occupier has with the neighborhood and the land values therein. *Moss v. Peoples Calif. Co.,* 134 Or 227, 293 P 606 (1930); *Hanns v. Friedly,* supra at

642. The rule is of doubtful wisdom, and has not been extended in this state to corporate ownership. *Highway Com. v. Assembly of God et al,* 230 Or 167, 368 P2d 937, 942. We see no reason to extend to a person who merely exercises an option the testimonial status of an owner. There was no error in excluding the plaintiff's own opinion on value.

■ Another assignment of error is found in the plaintiff's brief, but we decline to notice it. The plaintiff did not comply with ORS 19.074 (2)'(b). When less than a total transcript is designated, the points on which an appellant intends to rely must be stated in the designation of record. As the plaintiff failed to raise the point, it is not before us.

The defendant has cross-appealed. The cross appeal challenges the propriety of submitting to the jury certain allegations of damages found in the complaint. One is the $250 paid by plaintiff for the option. Another is the sum of $320 in interest which plaintiff said he could have earned elsewhere on the purchase money which he put in escrow when he exercised the option. The evidence supported the submission of both items to the jury.

There is no merit in the cross appeal.

Affirmed.