Argued February 4, reversed with instructions April 1, 1975

## LIPINSKY, *Appellant, v.* HUFFT, *Respondent.*

533 P2d 328

*Jack A. Gardner,* Eugene, argued the cause for appellant. With him on the briefs were Allen L. Johnson, Eugene, and Ernest Lundeen, Eugene.

*Richard E. Miller* of Miller, Moulton & Andrews, Eugene, argued the cause and filed a brief for respondent.

BRYSON, J.

Plaintiff brought this action to recover the balance due under the terms of a contract to remodel a building. Defendant's motions for a nonsuit and a directed verdict were denied, and the jury returned a verdict in favor of plaintiff. On defendant's motion the court set aside the judgment and entered judgment in favor of the defendant n.o.v. Plaintiff appeals, contending the trial court erred in granting the judgment notwithstanding the verdict.

■ We view the evidence in the light most favorable to the plaintiff. The plaintiff is entitled to the benefit of all favorable evidence and all favorable inferences which may be reasonably drawn from the evidence. *Austin v. Sisters of Charity,* 256 Or 179, 183, 470 P2d 939 (1970); *Krause v. Eugene Dodge, Inc.,* 265 Or 486, 490, 509 P2d 1199 (1973).

On October 7, 1968, plaintiff, as contractor, and defendant, as owner, entered into the following contract:

"WITNESSETH:

"That in consideration of the mutual promises and conditions herein contained to be performed by the parties,

"1. CONTRACTOR agrees to _____ construct according to plans and specs, addition and remodel Pleasant Valley Nursing Home according to Architect, James W. Keefe's plans dated 5/28/68 ON THE PREMISES of SECOND PARTY located at _____ 395 W. 29th Eugene, Lane County, Oregon, for the sum of _____ Sixty-thousand _____ three hundred seven _____ Dollars ($60,307) including plus

cost of materials, which SECOND PARTY agrees to pay as follows ___ as work progresses. Interest shall be charged on any late payments at the rate of eight per cent per annum. It is understood that the cost of the contracted job herein provided shall be a first and prior lien on said premises and that CONTRACTOR may take all steps necessary to protect his rights as such.

"2. Costs of any changes from original plans and design requested by owner shall be agreed upon and endorsed hereon before work is started.

"3. CONTRACTOR agrees to complete said job in a first-class manner and in accordance with the best practices of the trade unless otherwise specified. Said job to be completed in ___ 90 work days ___ working days. * * *.

"* * * * *.

"4. * * * The party's [sic] further agree that the unsuccessful party in any litigation shall pay such sum as the court may adjudge reasonable as attorney's fees for the prevailing party.

"IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first hereinabove written.

| /s/ Jimmy L. Hufft | (SEAL) |
| /s/ A. B. Lipinsky | (SEAL)" |

Plaintiff's complaint alleged:

"I

"That the parties entered into a written agreement on October 7, 1968 in which Plaintiff agreed to construct according to plans and specifications an addition, and to remodel the Pleasant Valley Nursing Home located at 395 West 29th Street, Eugene, Oregon, the plans and specifications to be submitted by an architect, James W. Keefe.

"II

"That the Defendant agreed to pay to the Plain-

tiff, the sum of $60,307.00, which said sum was to be paid as work progressed.

"III

"That the parties further agreed orally that the Defendant would pay to the Plaintiff the additional sum of $2,500.00 to be evidenced by a promissory note to be payable one-year following the completion of the project. That the Defendant has never provided the Plaintiff with the said promissory note.

"IV

"That the parties further agreed that any late payments should bear 8% interest per annum.

"V

"That the parties further agreed that the Defendant should bear the additional costs of any extra work which constituted changes from the original plan and design * * *.

"* * * * * *.

"VII

"That the Defendant has only paid the sum of $58,807.00 in connection with the said agreement, * * *.

"VIII

"That it was further agreed that should the Plaintiff be successful in any litigation, the Defendant shall pay such sum as the Court may judge reasonable as attorney's fees to the Plaintiff. * * *."

Defendant's answer admits each of the allegations in plaintiff's complaint above set forth and counterclaimed against plaintiff for damages for plaintiff's failure to complete performance of the contract within 90 days, for failure to perform the contract in a good and workmanlike manner, and for reimbursement because of overpayment of the contract, together with attorney's fees.

Plaintiff's amended complaint sets forth three requests for relief: (1) the balance of the written contract of $1,500; (2) an additional sum of $2,500 which the defendant would pay to the plaintiff after completion of the contract; and (3) extra work performed by plaintiff outside of the original contract in the amount of $3,563.74. The court instructed the jury as follows:

> "Putting this case very simple, Ladies and Gentlemen, along with a couple of other issues that I shall tell you about, you are to determine whether Jimmy Hufft owes Mr. Lipinsky any money because of this transaction they were involved in, whatever you find the transaction to be, or does Tony Lipinsky owe Jimmy Hufft because of this transaction that they have entered into, or is the situation such that neither one of them owe each other anything.
>
> "In other words, is it a push and neither one of them owe each other anything?"

The evidence shows that the parties originally entered into a contract for the sum of $65,807, but defendant could not secure a loan in excess of $60,000. Thereafter the two parties conferred with the architect; certain changes were made in an attempt to reduce the amount of the contract and defendant agreed to perform part of the labor and further agreed, as admitted, that he would pay the plaintiff an additional $2,500 following the completion of the project. This accounts for the execution of the new contract involved in this litigation in the amount of $60,307.

Mr. Keefe, defendant's architect and the supervisor of the project, testified that by May of 1969, but for certain minor details, plaintiff had substantially completed all of the work required under the architect's plans and specifications. He further testified

that all work under the written agreement was completed by June 9, 1969. There was evidence from which the jury could find that the parties had waived the "first-class" and "best practices" standard when the parties rewrote the contract and agreed to the employment of non-skilled laborers, including the labor of the defendant. The court submitted this issue to the jury as a question of fact with proper instructions. Mr. Keefe testified:

"Q. Are you saying then the job was substantially completed when the patients were moved in?

"A. Yes.

"Q. What do you mean by 'substantial completion'?

"A. Well, that's what I was trying to say. We maybe had light fixtures at—Some of the light fixtures might not be installed. We could have some trim not on. Maybe some of the hardware — As I recall, on one door there was some panic about hardware that hadn't come from the factory yet and they were waiting for that. Most of them were small items like this. This is not unusual about buildings.

"* * * * *.

"A. * * * I made this final inspection, and probably a little bit before that maybe they did move in, and they felt at that particular time everything was completed. So, I did make the final inspection on May 8th and made the punch list then.

"* * * * *.

"A. The punch list is any of the things that call for in the specifications or plans that were not in the building at that time or it could be paint slops or trim not finished. Just anything to complete the building.

"* * * * *.

"Q. Not part of the substantial completion but some little things that remained to be done?

"A. That's true."

After plaintiff had completed the items in the "punch list," the architect gave his final approval. He testified:

"Q. Was that corrected?

"A. As I recall, it was.

"Q. Then did you give approval for the final payment to the financing company?

"A. Yeah."

Mr. Keefe testified that all work under the written agreement was completed by June 9, 1969. He also testified that he had no control or supervision of the "extra work" not included in the written contract but that he was aware that plaintiff and defendant had agreed to certain "extra work" on and about the nursing home.

The trial court's judgment notwithstanding the verdict merely states:

"1. That defendant's motion for judgment notwithstanding the verdict be and the same is hereby granted;

"2. Judgment heretofore entered in favor of plaintiff against defendant be and the same is hereby set aside and held for nought;

"* * * * *."

However, defendant, in his points and authorities submitted to the trial court in support of his motion for judgment notwithstanding the verdict, contended:

"There was a total absence of competent evidence on the material allegation of the pleading, Paragraph I of the first cause of action of the specifications for the addition and remodeling. The

General Conditions of the AIA form A201, articles 1 through 14, were never offered nor received in evidence. * * *."

Defendant again contends, before this court, that plaintiff did not establish the general conditions of the agreement between the parties. The contract provided, "1. CONTRACTOR agrees to construct according to plans and specs, * * *." Plaintiff's Exhibit 5 covers the specifications for the work done by plaintiff on defendant's nursing home under the contract as set forth in paragraph I of plaintiff's complaint. It does not include "extra work." At the beginning of the written specifications is the following language:

"The General conditions of the contract for construction shall conform to the A.I.A. document no. A201. The table of articles are 1 thru 14. The articles can be inspected in the Architects office."

Mr. Keefe testified:

"Q.  Do you have those specifications with you, Mr. Keefe?

"A.  Yes, in the beginning of this I called for the general conditions of the contract, and this was the item that you asked about what my duties were. This also gives the duties of the owner, the architect, the contractor — all of them — and what I referred to on this was the general conditions of the contract for construction to conform with the A.I.A. No. 201, the table of articles 1 through 14 and this can be inspected in my office and I had this in the beginning of these specifications.

"Q.  So, that's part of the contract?

"A.  Yes.

"Q.  And that A.I.A. document, does that govern your duties under the contract?

"A.  Yes.

"Q. With reference to those duties, do you have a duty of inspection and approval of an architect?

"A. As an architect, yes.

"Q. And do you further have the duty to inspect and at least give some approval before any payment by the financial institution?

"A. Yes."

■ Mr. Keefe was not asked to produce articles 1 through 14 of A.I.A. No. 201, but he testified at length as to what his duties were and those of plaintiff and defendant under the written contract and that the "General conditions * * * article 1 thru 14" dealt with his duties as architect on the project. The "plans and specs" as called for in the contract were received in evidence and fully testified to by the witnesses. Therefore, there was competent evidence on the material allegation in paragraph I of plaintiff's pleading pertaining to the written contract.

In *Davis v. Bush & Lane Piano Co.*, 124 Or 585, 588, 265 P 417 (1928), an action to recover for labor and materials furnished by plaintiff and the repair and alteration of a store building, the complaint set forth two causes of action; one under a written contract and the other under an oral contract. The answer, as in the case at bar, admitted that both of said contracts were entered into by plaintiff and defendant. The plaintiff received a jury verdict and defendant appealed, contending that the court erred in refusing to allow defendant's motion for a nonsuit and for a directed verdict. We held:

"* * * Upon this issue plaintiff was bound to establish upon the trial the facts showing such performance upon his part. There was, however,

sufficient evidence tending to show a complete performance by plaintiff of all of the conditions of both of said contracts and, therefore, upon this issue defendant is concluded by the verdict.
\* \* \* ."

Likewise, in the case at bar there is substantial evidence to show that plaintiff performed all of the conditions of the written contract on his part to be performed.

We have fully reviewed the lengthy transcript of testimony and find there is substantial evidence to support the jury's verdict in accordance with the court's instructions. It is impossible to determine from the jury's verdict of $4,164.92, for construction and remodeling, what items they chose to delete from plaintiff's demands. A large portion of the testimony pertains to plaintiff's demand for "extra work performed" and defendant's denial thereof.

Reversed with instructions to reinstate the judgment based upon the jury's verdict.