Argued March 4, affirmed April 17, 1975

# RUDIE WILHELM WAREHOUSE CO., INC., *Appellant, v.* ROYAL INDUSTRIES, INC., *Respondent.*

533 P2d 1368

*Duane Vergeer,* Portland, argued the cause for appellant. On the brief were Thomas Sauberli, and Vergeer, Samuels, Roehr & Sweek, Portland.

*William L. Hallmark,* Portland, argued the cause for respondent. With him on the brief were C. Anderson Griffith, and McMenamin, Jones, Joseph & Lang, Portland.

HOWELL, J.

This is a products liability case. Plaintiff, a trucking company, seeks recovery from the defendant, a truck trailer manufacturer, for damage to plaintiff's truck and cargo resulting from a one-truck accident on August 31, 1971, near Klamath Falls. Plaintiff's first cause of action is in two counts—one in strict liability and the second in negligence—and seeks recovery for damage to plaintiff's cargo. Plaintiff's second cause of action, in strict liability, seeks recovery for damage to the truck. The defendant has denied the existence of a defect in the trailer and, as an affirmative defense, alleges that the cause of the accident was the negligence of plaintiff's driver. The jury returned a verdict for defendant on both causes of action, and plaintiff appeals.[1]

Defendant manufactured a trailer known as "The Western Heavy Hauler." This trailer was a unique vehicle designed to carry extremely heavy loads. When attached to the tractor, the unit was approximately 100 feet long and spread the load over nine axles. The

---

[1] Counsel on the appeal are not the same counsel who tried the case in circuit court.

trailer was actually four components, connected with pivot plates. The controversy in this appeal chiefly surrounds the design and manufacture of the last unit, the rear booster or "jeep" unit.

Long trailers have a tendency to "track in" (cut the corner) when the truck is negotiating sharp curves. The defendant designed the trailer in this case with a special tracking bar in the rear unit. This tracking bar was designed in such a manner as to counteract the "tracking in." More specifically, the tracking bar was intended to slightly direct rear axles numbers eight and nine away from the direction of the turn and thus allow those axles to follow the same course around the turn as the forward axles.

Defendant sold the trailer to plaintiff. After taking delivery in March, 1970, plaintiff experienced difficulties with the rear tracking unit. On several occasions defendant made adjustments and repairs to the system.

Plaintiff's driver drove the truck and trailer to Seattle to pick up a particle board prepress for delivery to Klamath Falls. On his return trip the driver apparently experienced no difficulties until he was just north of Klamath Falls. While rounding a left curve in the highway, the rear of the trailer apparently left the road on the right. The trailer broke free of the truck and ran into a ditch, causing the particle board prepress to fall off.

Plaintiff's expert witness testified that the separation of the trailer from the truck was caused by the improper design and manufacture of the tracking arm and defects in certain units which connected the various components of the trailer. These factors caused a fracture in the bracket connecting the trailer and the truck. Defendant's experts disputed plaintiff's expert as to the cause of the accident. Defendant's theory

of the case was that the accident was attributable to road conditions or to driver error.

Plaintiff's first assignment of error alleges that the court erred in sustaining objections to questions directed to defendant's project engineer regarding subsequent repairs and load tests performed on the trailer. In his brief plaintiff contends that the evidence was relevant to show that, when the trailer was repaired and placed in substantially the same condition as before the accident, tests demonstrated that the rear unit tracked improperly when the trailer was loaded and that this design defect was subsequently cured by installation of torsion bars.

We do not reach the question of whether this evidence was admissible in the instant case. When the plaintiff questioned defendant's engineer regarding the tests, defendant objected on the grounds of relevancy. When the court specifically questioned plaintiff's counsel as to the purpose of the questions, counsel made no attempt to make an offer of proof but merely stated: "I simply inquired as what repairs were made after the accident. I was interested in knowing." After both sides had rested and the jury excused, the court and counsel were discussing which allegations should be submitted to the jury. At that time plaintiff's counsel made a general reference to "the evidence we didn't get in." Again, it was not an offer of proof and, in any event, it would have been untimely because the evidence had been completed.

■ As a general rule, in order for this court to consider whether an objection to evidence was properly sustained, it is incumbent upon the one asking the question to make an offer of proof. In *Downey v. Traveler's Inn*, 243 Or 206, 210, 412 P2d 359 (1966), we stated:

"* * * An excellent statement of the purpose of

an offer of proof and the necessity for specificity is set forth in *Booth-Kelly* [*Booth-Kelly Lumber Co. v. Williams,* 95 Or 476, 188 P 213 (1920)]. The case held that it was not sufficient to read into the record the language of a pleading as an offer of proof. The court said:

" '* * * In making an offer of proof it is requisite that counsel should be distinct and clear. The tender should embody the specific fact or facts in such connection and in such terms as to be apprehended and ruled upon in the intended sense by the trial judge, and be examined and applied in the appellate court in the proper light to test the accuracy of the ruling, if adverse. * * *' 95 Or at 483."

*See Prestbye v. Kliphardt et al,* 113 Or 59, 231 P 187 (1924) ; *Columbia R.I. Co. v. Alameda L. Co.,* 87 Or 277, 168 P 64, 168 P 440 (1918). *See also* McCormick on Evidence 109, § 51 (2d ed 1972) ; Annot., 89 ALR2d 279 (1963). Plaintiff having failed to make an offer of proof, we cannot consider plaintiff's first assignment of error.

■ The plaintiff next contends that the trial court erred in striking the following specified defect from the amended complaint:

"The aforementioned sudden uncontrollability of the trailer system was caused by one or more of the following defects in the design and manufacture thereof:

"* * * * *

"(c) In designing and manufacturing the trailer system with inadequate and insufficient rigidity in the components, permitting the trailer under intended use conditions to flex unduly and to track improperly.

"* * * * *"

We agree with the trial court that there was insufficient evidence to support this specification of defect.

Plaintiff produced evidence from several witnesses which supported the theory that, immediately prior to the accident, the trailer was tracking improperly. One disinterested witness testified that the rear jeep unit began to "wobble" just prior to the time of the accident. Another witness, following the trailer, testified that the rear axles appeared to steer themselves and just steered off the road.

However, plaintiff did not produce any evidence which would indicate that this improper tracking was caused by inadequate or insufficient rigidity in the components. The import of the testimony of plaintiff's expert, as noted by the trial judge, was that some lack of rigidity in a trailer was normal.[2] He testified that a rocking of the load, present in this case, was a normal response when making a turning movement. He theorized that it was the defective design of the rear tracking system and its inability to cope with this rocking of the load which contributed to the accident.

It is clear that plaintiff intended to use the results of the postaccident tests and modifications re-

---

[2] It is difficult to determine from the allegation and the evidence what plaintiff intended by "insufficient rigidity in the components." What degree constitutes insufficient rigidity? Plaintiff's expert did testify that the rear pivot plate was convex in shape and that this convexity caused a lack of rigidity, which in turn contributed to improper steering. However, he also testified that there must be some movement in the rear pivot plate or there would be mechanical problems.

Moreover, in specification (d) in the complaint, which was submitted to the jury, plaintiff specifically alleged that the convexity of the rear pivot plate, combined with the improper design of the rear steering system, caused the unit to track improperly:

"(d) Designing the steering arrangement for the rearmost axle in a manner which, combined with the convex form of the pivot plates on the bed frame of the trailer and self steering unit, caused an aggravation of loading stresses thereby preventing the rear self steering unit from tracking properly behind the trailer to which it was affixed and thereby rendering the unit highly susceptible to failure when used in the manner intended."

ferred to above to show that there was inadequate or insufficient rigidity in the components. The trial court correctly struck specification (c).

■ Plaintiff's final assignment of error deals with the refusal of the court to allow plaintiff, in his rebuttal, to introduce evidence of an admission made by defendant's engineer at the scene of the accident. As stated in *State v. Fischer,* 232 Or 558, 563, 376 P2d 418 (1962):

> "* * * It is within the sound discretion of the trial court to allow in rebuttal testimony which becomes relevant in rebuttal even though it might have been used in the case-in-chief. * * *"

In the instant case the trial court did not abuse its discretion in excluding the testimony on rebuttal.

Affirmed.