Argued February 8, reversed March 31, 1977

JACOBS, *Appellant,*
*v.*
TIDEWATER BARGE LINES, INC., *Respondent.*

(No. 407-849, SC 24365)

562 P2d 545

Charles Robinowitz, Portland, argued the cause for appellant. With him on the briefs was Newton R. Brown, Wilmington, California.

Paul N. Daigle and Ridgway K. Foley, Jr., of Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Holman, Howell, Bryson, Lent, Linde, and Bradshaw, Justices.

LENT, J.

## LENT, J.

Plaintiff, a longshoreman, brought a third party action against the owner of a vessel for damages for personal injuries allegedly resulting from negligence.[1] Judgment was entered for plaintiff upon a jury verdict. Defendant's motion for judgment notwithstanding the verdict was allowed, and plaintiff appeals, assigning as sole error the allowance of the motion.

On that assignment of error, unless we can affirmatively say there is no evidence to support the verdict, it must be reinstated.[2] Our inquiry on review, therefore, is to search the record to ascertain whether it contains evidence which supports the verdict. In performing our function, we do not weigh the evidence. We are required to accept as being true all evidence and inferences therefrom in the light most favorable to the party who prevailed before the jury. This necessitates resolving any conflicts in the evidence in favor of that party.[3]

Plaintiff was an experienced longshoreman employed by Continental Grain Co. as a millwright. Continental employed defendant Tidewater Barge to carry a load of wheat from Pasco, Washington, to its facilities at Longview, Washington.

On August 11, 1973, Barge 44 arrived at Longview for unloading. Barge 44 is one of eight newer barges which are "automatic unloading" vessels. They were designed to eliminate the need to enter the hold except for repair or cleaning purposes. This particular barge

---

[1] 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act, § 5(b), 33 U.S.C. § 905(b).

[2] "In actions at law * * * no fact tried by a jury shall be otherwise reexamined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict. * * *." Oregon Constitution, Amended Article VII, Section 3.

[3] *See Package Containers v. Director's,* 270 Or 845, 846-47, 530 P2d 40 (1974). *Lipinsky v. Hufft,* 271 Or 572, 573, 533 P2d 328 (1975); *Krause v. Eugene Dodge, Inc.,* 265 Or 486, 490, 509 P2d 1199 (1973); and *Austin v. Sisters of Charity,* 256 Or 179, 183, 470 P2d 939 (1970).

had two adjoining holds separated by a bulkhead. At the bottom of the bulkhead is an opening between the two compartments with a gate which can be raised or lowered by a cable. The bottom of the hold is vee-shaped with a covered auger or screw running along at the lowest depth. There is space between the gate and the screw into which a "grain leg" is lowered for unloading grain. A grain leg is a series of buckets attached to a continuous conveyor belt with two pulleys. The buckets scoop out a load, transport it to the top, dump it, and return for another load.

To protect the screw from damage when the leg is misplaced, Tidewater added a "thwartship brace" to the vessel. The brace is a pipe connecting the two sides of the vee-shaped bottom, and it is located above the point where the screw ends. In other less modern barges in Tidewater's fleet, the thwartship brace is located at a point higher in the hold. On Barge 44 and the other barges in that series, the brace is positioned about four feet from the bottom of the hold at about the level of the top of the bulkhead opening which is used as a grain passage between the two compartments.

On the day of the injury, plaintiff was asked by his supervisor to repair the broken gate cable on Barge 44, because it was necessary to raise the gate in order to unload the other compartment. Plaintiff and a helper descended the ladder into the hold. Because the grain leg was still in place (and because it was positioned between the ladder and access to the cable), plaintiff walked around the leg. The grain leg was too close to the bulkhead to permit him to go between the leg and the bulkhead to reach the other side. At this time the level of grain was even with the top of the opening (where the cable was attached). The thwartship brace was submerged a few inches under the grain. In passing around the leg, plaintiff's heel slipped on the brace; he fell backward and injured his back.

Plaintiff's theory of negligence, as submitted to the

jury, was that defendant was negligent in failing to warn plaintiff of the hidden danger occasioned by the unique placement of the brace and that defendant was negligent in maintaining the gate cable, which created an extra-hazardous situation by requiring a potential repairer to descend into unfamiliar and dangerous territory.

There is no dispute between the parties as to the duty aspect of this case.[4] Both litigants agreed that defendant owed a general duty to the plaintiff to exercise reasonable care to protect the plaintiff from latent or concealed dangers of defendant's making. Defendant, however, contends that it is beyond dispute that injury to this plaintiff in particular and in this particular manner was unforeseeable and, therefore, the jury verdict cannot stand.

Our review of the record discloses evidence on the foreseeability issue sufficient to create a jury question. Plaintiff and others testified that it was a long-standing custom of Continental to perform minor repairs on barges and that this repair, which involved clamping the cable and took around 10 to 15 minutes, was minor. Testimony was introduced that Tidewater knew of this custom, as it had been billed for minor repairs in the past.

Defendant objects that it never knew of repairs made in the hold by Continental employees (as opposed to electrical repairs made on deck). It admits that in the past clean-up crews from Continental have labored in the hold to dislodge wet grain, a situation involving risks similar to the instant predicament. It

---

[4]Prior to the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act, liability of the vessel could be premised on the theory of unseaworthiness, a concept imposing liability in some cases without fault. The Amendments substituted a uniform federal negligence standard as the obligation owed by the shipowner to a longshoreman. We do not in this case need to specifically define the parameters of this duty. The case was tried and submitted to the jury under the standards of care pronounced in 2 Restatement of Torts, Second, 215-218, §§ 343, 343A (1965).

may be inferred, therefore, that Tidewater knew of a potential class of persons who would be in the hold in a situation where the brace could be covered by grain. Even though plaintiff was not a member of this class, it is significant that Tidewater could foresee some persons within the zone of this particular danger.

■ More importantly, however, plaintiff testified that this particular cable had been broken and clamped three or four times previously. Defendant's maintenance supervisor testified that cable breakage was a rare phenomenon. According to this witness, only three cables on six or seven barges with this design had been repaired in the past few years, and Tidewater always replaced broken cables with new cable rather than splicing or clamping the break. Assuming that the particular cable on Barge 44 had been severed three or four times recently without replacement, the jury could have reasonably concluded that defendant should have known that someone other than its repairers had clamped the cable, and that these persons most reasonably would be longshoremen engaged in unloading the vessel.

■■ Plaintiff testified that the cable appeared old and frayed to him and that "it should have been replaced a long time ago." Because of defendant's practice of replacing broken cables rather than splicing or clamping the break, the jury could have concluded that it was better practice to do so and that such a procedure would minimize the risks brought about by entry into the hold to repair. All of the parties agree that walking on grain is extremely dangerous and akin to "walking on ice." From this premise, a duty exists to persons foreseeably within the ambit of that risk to minimize any potential for harm. The facts indicate that plaintiff was of this class of foreseeable repairers, and it was therefore for the jury to decide if defendant was negligent in failing to inspect or replace the cable so as to reduce the number of potential occasions for entry into a hold with grain.

As to the allegation that defendant was negligent in failing to warn of the location of the brace, defendant argues that plaintiff should have known of its placement and that a warning was, in any event, impractical. Defendant posits that vessels of this series had visited Longview previously and that Barge 44 itself had been loaded by Continental employees although in a different port. From these facts defendant concludes that a warning would have been redundant because plaintiff should have known of the placement of the brace. We disagree.

■ The mere fact that *some* Continental employees presumably knew of the brace does not make it reasonable for defendant to conclude that *all* potential Continental employees entering the hold would also have such knowledge. If defendant had a duty to warn, it was owed to all potential persons within the zone of the danger posed by the brace. This obligation is not excused merely because some persons would not have needed warning. Plaintiff testified that he was unfamiliar with the location of the brace. Plaintiff's supervisor testified likewise. In view of the uniqueness of the design and in light of the small period of time in which such vessels had been operating, the jury could well have found that plaintiff's unfamiliarity was to be expected and could have been guarded against by posting a warning by the hatch, near the ladder on the bulkhead, or in another conspicuous spot.

■ Defendant finally contends that it could not have foreseen the exact manner in which this accident occurred. It points out that it would have been inexpensive for plaintiff or his employer to remove the grain leg and thus allow a shorter journey to the gate with minimal possibility of contact with the brace. This might be so. But evidence existed that the danger posed by the submerged brace was unknown. Plaintiff or his employer may have been negligent in not planning for the shortest route, and the jury found

both plaintiff and Continental to each be one-third at fault. But such lack of care will not absolve defendant from its own separate negligence which was a cause of the injury.

In *Stewart v. Jefferson Plywood,* 255 Or 603, 469 P2d 783 (1970), the plaintiff brought an action against the owner of a sawmill for injuries sustained while plaintiff was fighting a fire caused by the careless conduct of the owner's employee. Plaintiff fell through a dust-covered skylight of a building adjacent to the burning sawmill while trying to extinguish sparks from the fire. We found that these facts presented a jury question on liability. We held the issue in such cases to be whether "plaintiff's injury and the manner of its occurrence was so highly unusual that we can say as a matter of law that a reasonable man, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur." (255 Or at 609.) In the present case we cannot say that the conduct of plaintiff or his employer was so clearly unforeseeable that defendant could not have anticipated the injury. For this reason it was error to grant the judgment notwithstanding the verdict.

Reversed with instructions to reinstate the judgment based upon the jury's verdict.