GREEN, *Respondent/Cross-Appellant,*

*v.*

UNCLE DON'S MOBILE CITY,
*Appellant/Cross-Respondent.*

(No. 40412, SC 24650)

568 P2d 1375

Robert H. Anderson, of Murphy, Anderson & Cegavske, Roseburg, argued the cause and filed briefs for appellant/cross-respondent.

Dean Heiling, Roseburg, argued the cause for respondent/cross-appellant. With him on the brief was Heiling and McIntosh, Roseburg.

Before Denecke, Chief Justice, and Bryson, Linde, and Campbell, Justices.

BRYSON, J.

**BRYSON, J.**

This is an action for fraud arising out of a contract wherein plaintiff agreed to purchase a mobile home from defendant. The jury returned a verdict in favor of plaintiff and judgment was entered on that verdict. Defendant appeals and plaintiff cross appeals on the disallowance of witness fees in her cost bill.

Defendant first assigns as error the trial court's failure to grant its motion for a directed verdict, contending there was insufficient evidence to submit the case to the jury. There were direct conflicts of testimony between defendant's and plaintiff's witnesses.

On such an issue, we determine if there is sufficient evidence to support the jury's verdict. The plaintiff is entitled to the benefit of all favorable evidence and all favorable inferences which may reasonably be drawn from the evidence. Further, the jury judges the credibility of the witnesses testifying before it. Accordingly, we view the evidence in the light most favorable to the plaintiff, and all conflicts of evidence must be resolved in favor of the plaintiff. *Lipinsky v. Hufft,* 271 Or 572, 573, 533 P2d 328 (1975); *Krause v. Eugene Dodge, Inc.,* 265 Or 486, 490, 509 P2d 1199 (1973).

From the evidence received, the jury could have found as follows. Sometime on April 24, 1972, plaintiff Susie Green went to Mobile City with her daughter and daughter-in-law to shop for a mobile home. She was aided in her search by one of defendant's salesmen, a Mr. West.

Mrs. Green found a mobile home suitable for her needs but was hesitant to purchase it because she was uncertain whether she would have sufficient income to meet the monthly payments. Plaintiff's only income, in addition to her social security, was a $75 monthly payment she received on the contract from the sale of her home in California. Prior to leaving California she had also received some state welfare assistance.

Mrs. Green informed West that she would purchase the mobile home only if she could obtain financial assistance from welfare to help with the monthly payments. West assured her that he thought such a contract could be arranged and prepared a work sheet with the notation, "sale subject to Welfare Dept. Approval." Plaintiff was requested to sign the work sheet and did so.

The sale was completed that same day, April 24, 1972. During this portion of the transaction Mobile City was represented by its sales manager, a Mr. McCarty. Mr. McCarty went over the work sheet with plaintiff and was aware that the contract was to be subject to the procurement of welfare assistance.

After reviewing the work sheet, defendant's sales manager directed plaintiff to sign several blank forms, one of which was the uncompleted purchase agreement. When this purchase agreement was subsequently filled in, the provision on the signed work sheet, that the contract be subject to welfare approval, was omitted.

Mrs. Green testified as follows:

"Q   And now, when you signed the contract, it was in the same terms as it is right now, wasn't it?

"A   No, sir, I think I signed the papers and took it in and filled it out like Dean was supposed to or West was supposed to.

"Q   Are you stating that when you signed this contract it was in blank?

"A   It was.

"* * * * *.

"Q   Now, the one that West wrote, did that provide something about the Welfare Department?

"A   Absolutely. We wrote on there—I told him I would not take the trailer unless the Welfare approved of it and he wrote it right down on the corner and when he brought that back, it wasn't even wrote on it.

"Q   Now, did this all happen on April 24th?

"A   I believe so. It was."

[ 428 ]

The following day Betty Williams, plaintiff's daughter, called welfare officials in Oregon and California and discovered that plaintiff would not be eligible for welfare benefits. She called salesman West the same day, and he advised her that he thought her mother would be able to get her down payment back.

On April 26, 1972, plaintiff and her daughter returned to Mobile City to talk with sales manager McCarty about cancelling the purchase agreement. Upon hearing of plaintiff's difficulties, McCarty placed a call to one Janice Allen, an employee of the California Welfare Department. Mrs. Allen informed him that it was of no concern to the California Welfare Department whether plaintiff bought a mobile home because plaintiff had moved to Oregon and was no longer eligible for California benefits. Notwithstanding this knowledge, sales manager McCarty represented to plaintiff that the welfare department had said it was "okay" to go ahead and purchase the mobile home.

Plaintiff also signed a retail installment contract dated May 30, 1972, which assigned her purchase agreement with defendant to Commercial Credit. Plaintiff did not recall signing this instrument, but her daughter, upon whom Mrs. Green was dependent for transportation, testified that her mother did not visit Mobile City on May 30, 1972, and that she signed no additional papers after the April 26 meeting with defendant's sales manager.

Defendant's sales manager testified that, on the 29th or 30th of May, Mrs. Green visited Mobile City and expressed dissatisfaction with the trailer she had purchased. He further testified that the problems were resolved and that the retail installment agreement was signed on May 30, 1972. Regardless of the May 30 date, the jury could reasonably infer that the retail installment contract was signed on April 26, after defendant's sales manager's representation that welfare had approved the sale.

Defendant delivered the mobile home to plaintiff's property contrary to plaintiff's numerous requests that the mobile home not be delivered. When plaintiff failed to make her monthly payments, defendant repossessed the mobile home, resold it, and retained plaintiff's $1,200 down payment.

■ Defendant contends that plaintiff failed to prove that defendant made its promise to make the contract conditional upon welfare approval with the present intent not to perform the promise.[1] We recently discussed the standard of proof necessary to show promissory fraud in *Sproul v. Fossi,* 274 Or 749, 752, 548 P2d 970 (1976). However, it is not necessary to reach that question because we are satisfied that plaintiff proved fraud on the part of defendant. The amended complaint, upon which the case went to trial, alleges defendant "advised and represented to Plaintiff that said contract would be conditioned upon Plaintiff's receiving said special public financial assistance. In reliance thereon, Plaintiff paid Defendant the sum of $1,200.00 as a down payment for said mobile home."

The work sheet signed by plaintiff stated, "sale subject to Welfare Dept. Approval," and plaintiff's understanding was that the contract would be so conditioned. On the switch of plaintiff from salesman West to sales manager McCarty, the language that the sale was subject to welfare approval was omitted from the contract. By accepting part of defendant's testimony and part of plaintiff's testimony, the jury could have found that when plaintiff signed the contract the defendant concealed from her that the words "subject to Welfare Dept. Approval" had been omitted. This

---

[1] It also contends that plaintiff failed to prove reliance. Defendant argues that the parol evidence rule forecloses plaintiff from seeking to undermine the terms of the purchase agreement by introducing evidence of prior or contemporaneous promises and representations. This court has held that proof of fraud by such evidence is an exception to the parol evidence rule. *Heise et ux v. Pilot Rock Lbr. Co.,* 222 Or 78, 88, 352 P2d 1072 (1960).

concealment was the fraud, and it is not promissory fraud.

> "The elements necessary to establish an action for fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Rice v. McAlister,* 268 Or 125, 128, 519 P2d 1263 (1974).

All these elements were established in this case. Plaintiff was damaged because the concealment and misrepresentation caused her to sign the contract and pay the $1,200 when the transaction should have been terminated.

Defendant's assertion that plaintiff ratified or waived her right to damages for the fraud must also fail. In *Conzelmann v. N. W. P. & D. Prod. Co.,* 190 Or 332, 354, 225 P2d 757 (1950), relied on by defendant, we stated the elements required to show ratification:

> "It is well established by the authorities that when one who has been induced by fraud to enter into a contract, subsequently, with knowledge of the fraud, enters into *another agreement* respecting the same transaction with the one guilty of the fraud, he, the injured party, thereby waives and relinquishes all right to damages on account of such fraud. *If he receives some substantial concession* from the one guilty of such fraud, he waives his right to insist further upon holding the wrongdoer responsible in damages for the fraud. * * *" (Emphasis added.)

Plaintiff's evidence disputes the signing of any agreement after plaintiff learned of the fraud, and there is no evidence of a substantial concession to plaintiff. True, on April 25, 1972, plaintiff did learn that she would not be eligible for welfare assistance. However, the jury could also have found that plaintiff was assured by defendant's sales manager that the California welfare department had informed him that everything would be "okay." Plaintiff was not suffi-

[ 431 ]

ciently aware of the fraud to render a knowing ratification or waiver of it. *See Chester v. McDaniel,* 264 Or 303, 307, 504 P2d 726 (1973).

The retail installment contract was not a new agreement. It represented no changes from the original agreement and made no substantial concession to plaintiff. It covered the same mobile home and contained the same payment schedule and final price. The retail installment contract did nothing more than assign the already existing purchase contract to Commercial Credit Corporation.

We conclude there was sufficient evidence for the jury to find that in signing the retail installment contract plaintiff did not intend to ratify or waive defendant's fraudulent act. Accordingly, the trial court did not err in denying defendant's motion for a directed verdict.

Defendant also contends that the court erred in denying its motion for an order striking plaintiff's request for punitive damages.

■ In *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 425, 435 P2d 306 (1967), we held that "it is only in those instances where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent that the use of punitive damages is proper." We have consistently held that the intentional statement of an untruth for the purpose of taking a plaintiff's money is the violation of a societal interest sufficiently great to warrant punitive damages.

■ The fraud in this case was sufficiently aggravated to support an award of punitive damages. *McGill v. Huling Buick Company,* 259 Or 413, 487 P2d 656 (1971); *Lewis v. Worldwide Imports, Inc.,* 238 Or 580, 582, 395 P2d 922 (1964) (overruling in part *Cays v. McDaniel,* 204 Or 449, 283 P2d 658 (1955), relied upon by defendant). We conclude that the trial court did not err in denying defendant's motion to strike.

■ Plaintiff also cross appeals from the trial court's

order sustaining objections to plaintiff's cost bill covering certain witness fees.

ORS 20.020 provides:

> "A party entitled to costs shall also be allowed for all necessary disbursements, including the fees of * * * witnesses * * *."

This statute has been uniformly construed to allow costs where the evidence, though not offered at trial because of some unforeseen circumstances, was material, important and necessary.[2] Where the witness did testify, it is presumed that the statute has been satisfied and no error is committed in allowing the fees requested. *Spencer v. Peterson,* 41 Or 257, 262, 68 P 519, 1108 (1902). We have not previously had occasion to pass on the denial of witness fees where the testimony of a witness was offered but not received by the trial court.

■ No Oregon cases are cited, and we have found none on this specific point. Generally, the taxability of the fees of a witness who did not testify is dependent upon materiality of the proposed testimony. See 22 ALR3d 682 *et seq. Compare Urban Renewal v. Starr Foods, Inc.,* 16 Or App 475, 479, 519 P2d 101 (1974).

■ In the typical case, the trial court is in the best position to decide whether a witness's testimony is necessary to the party's case, and the court's determination should only be reversed for abuse of discretion.[3] It follows that the trial court's disallowance of costs should not be overturned unless, as a preliminary matter, it is found that the decision to disallow the proffered testimony was erroneous.

Defendant's witness testified that defendant's purchase agreements are always carefully explained to

---

[2] *See, e.g., Pugh v. Good,* 19 Or 85, 23 P 827 (1890); *Lumber Co. v. Garrett,* 28 Or 168, 42 P 129 (1895); *Willis v. Lance,* 28 Or 371, 383, 43 P 384 (1896).

[3] *Lumber Co. v. Garrett, supra* n. 2. *Cf. American Sanitary Service v. Walker,* 276 Or 389, 395, 554 P2d 1010 (1976); *Kendall v. Curl et al,* 222 Or 329, 340, 353 P2d 227 (1960).

purchasers before signature. On rebuttal, plaintiff attempted to call four witnesses[4] to testify that defendant did not fully explain or give detail before purchasers signed a purchase agreement with defendant. This evidence was in direct contradiction of that offered by defendant. The court allowed objection to the testimony which was then received by way of an offer of proof.

Two of plaintiff's witnesses also testified to additional material matters. Colleen Fisher and Charles Thouvenel, on the offer of proof, testified that defendant, on prior occasions, had made promises to purchasers which, unbeknown to those purchasers, were not included in the later written purchase agreement and which later were not honored by defendant.

Since this was a material part of plaintiff's case, and not merely a collateral matter, such testimony should have been received as rebuttal evidence. We noted in *Freedman v. Cholick et ux,* 233 Or 569, 572, 379 P2d 575 (1963):

> "In general, rebuttal testimony will be excluded except for that made necessary by the opponent's case-in-chief. *State v. Fischer,* 232 Or 558, 376 P2d 418 (1962); 6 Wigmore, Evidence (3d ed) 510, § 1873. * * *"

*See also, Rudie Wilhelm W'house v. Royal Ind.,* 271 Or 701, 707, 533 P2d 1368 (1975).

The witnesses Colleen Fisher and Charles Thouvenel offered evidence of prior similar acts. We have previously held, in cases alleging fraud, that evidence of similar false representations made to other parties is admissible on the issue of defendant's motive, intent, or scienter.[5] Such testimony should be

---

[4]Plaintiff included in her cost bill the fee for witness Glen Fisher, but no offer of proof was made concerning his testimony. With no record, we have no way of determining if the court erred in not receiving the testimony.

[5]*Karsun v. Kelley,* 258 Or 155, 160, 482 P2d 533 (1971); *Fahrenwald v. Hemphill,* 239 Or 421, 425, 398 P2d 174 (1965); *Carpenter v. Kraninger,* 225 Or 594, 601-02, 358 P2d 263 (1961); 2 Wigmore on Evidence 200, § 302 (3d ed 1940).

allowed on rebuttal when it directly contradicts material evidence proffered by the opposing party.[6] Prior acts may be used to contradict material testimony where the surrounding circumstances are similar. *Archer v. Gage et al,* 126 Or 532, 548, 270 P 521 (1928). In the case at bar, evidence of prior similar acts would be relevant to contradict defendant's testimony that it always completely explained all of the contract provisions to the parties prior to execution of the purchase agreement. This testimony also showed similar false representations made to parties other than the plaintiff. Thus, the testimony of Fisher and Thouvenel was material and important to plaintiff's case and should have been received. There is still the question as to whether or not the trial court abused its discretion in not receiving the testimony of the two witnesses.

In *Carter v. Moberly,* 263 Or 193, 501 P2d 1276 (1972), we discussed the role of the appellate court in reviewing "discretionary" trial court decisions and held, at page 201:

> "* * * We simply determine whether, on the facts of the particular case, the trial court's ruling was within the reasonable or permissible range. * * *"

In this case the trial court erred in not receiving the testimony of the two witnesses and therefore was outside of its "permissible range" when it denied plaintiff's proffered testimony from these two witnesses.

The remaining two witnesses, whose witness fees were denied in the cost bill, offered testimony that was not material to the plaintiff's case on rebuttal. The proffered testimony was therefore inadmissible. We have held that where inadmissible evidence is commingled with admissible evidence in an offer of proof, it is not error for the trial court to reject the offer of proof.

---

[6] *See Rudie Wilhelm W'house v. Royal Ind.,* 271 Or 701, 707, 533 P2d 1368 (1975) wherein we held it to be "within the sound discretion of the trial court to allow in rebuttal testimony which becomes relevant even though it might have been used in the case-in-chief."

*Freedman v. Cholick et ux,* 233 Or 569, 576, 379 P2d 575 (1963).

Affirmed and remanded to enter costs in accordance with this decision.