DAILEY et ux,
*Respondents,*

*v.*

SUNDANCE RANCHES, INC. et al,
*Defendants,*

SUNDANCE LAND AND LIVESTOCK
CORPORATION et al,
*Appellants.*

(No. 29336, CA A21944)

650 P2d 994

Mark L. Cushing, Salem, argued the cause for appellants. On the briefs were J. Philip Parks, and Parks & Bauer, Salem.

William M. Holmes, Bend, argued the cause for respondents. With him on the brief was Gray, Fancher, Holmes & Hurley, Bend.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges. °

THORNTON, J.

Richardson, P. J., concurring

## THORNTON, J.

Defendants appeal from a judgment entered on a jury verdict that awarded plaintiffs compensatory and punitive damages.[1] The only issue is whether the trial court erred in submitting the question of punitive damages to the jury. We conclude that there was sufficient evidence to submit the issue and affirm.

Plaintiffs attended a sales meeting put on by defendant Craigmiles in March, 1978. The meeting was designed to acquaint potential buyers with the "Sundance Land and Livestock" project, a multi-faceted recreational resort a few miles south of Bend. Plaintiffs drove to the resort two weeks later to see the facilities. They were given a tour and stayed overnight. The next day they asked Craigmiles about the adjoining Sundance Ranch subdivision and in particular whether any lots in the subdivision were for sale. After talking to defendant Clawson, Craigmiles told plaintiffs that two lots had recently become available and proceeded to show them the lots. Plaintiffs liked one of the lots and decided to buy it.

The lot plaintiffs decided to buy had already been purchased by a Roger Sprinkle in 1976 and was in fact owned by him at the time plaintiffs decided to buy it. Sprinkle had, however, previously entered into the following agreement with Clawson:

"We agree to the following: Lot 5, Block 4, *and Lot 2, Block 8 [the lot at issue] will be sold by Gary Clawson.*

"The sales price of the first lot above sold will be split one-half with Gary Clawson and one-half with Roger Sprinkle.

"When both Lots in number 1 above are sold and the down payments received by Gary Clawson, Lot 3, Block 8 will be transferred to Roger Sprinkle free and clear.

"The second lot in number 1 above will become property of Gary Clawson." (Emphasis supplied.)

According to plaintiffs,[2] they were not told that Sprinkle owned the lot. They testified that they were told

---

[1] There were four defendants below — Sundance Ranches, Inc., Sundance Land and Livestock, Inc., Gary Clawson and Gary Craigmiles. Only Sundance Land and Livestock, Inc., and Clawson appeal.

[2] We view the evidence in the light most favorable to plaintiffs. *See Mabin v. Tualatin Development,* 48 Or App 271, 274, 616 P2d 1196 (1980).

only that the lot had become "available," and no mention of ownership was made. Although Sprinkle's name was listed as seller on the real estate sale contract that plaintiffs signed, nothing was expressly said about Sprinkle. Mr. Dailey testified that, so far as he was concerned, he was dealing through Craigmiles with Sundance Meadows.

About two months after the "sale," Clawson discovered that there might be a problem with the Clawson-Sprinkle agreement. Sprinkle had decided not to follow through with the agreement. As a result, Clawson filed suit against Sprinkle, but Sprinkle prevailed because the court found that Clawson was not a licensed real estate broker and, therefore, the agreement that allowed him to sell Sprinkle's lot was unenforceable.[3]

Plaintiffs made 26 monthly payments under the real estate contract and first learned of the problem with ownership of the lot in June, 1980. During that period, they sold their residence in Portland and spent several hundred dollars on architectural plans for a home on the lot. In June, 1980, Clawson's brother told plaintiffs that they did not own the lot and showed them other available lots, none of which was satisfactory.

Plaintiffs filed the present action in March, 1981, alleging causes of action for fraud and for violation of the Unlawful Trade Practices Act (UTPA), ORS 646.605 *et seq,* and seeking general as well as punitive damages. Under the UTPA cause of action, plaintiffs alleged, in part, that:

"XII
"Sundance Ranches, Inc., Sundance Land and Livestock Corporation, Gary Clawson, and Gary Craigmiles made the following representations to plaintiffs:

"1. That they owned the lot and had the right and authority to sell it;

"2. That plaintiffs would be entitled to the use, possession and occupancy of the lot upon entering into the contract to buy it;

"3. That a contract would be recorded in the public records showing plaintiffs' ownership once plaintiffs entered into the contract;

---

[3] The propriety of this ruling was not an issue at trial in this case.

"4. That a copy of the contract and a warranty deed would be deposited by defendants with Trans/Action Escrow Service, with the deed to be recorded upon payment of the balance of the purchase price for the lot."

They further alleged that the representations were false because defendants did not own the lot and failed to disclose the true ownership of the lot. Defendants answered, in part, as follows:

"III

"Defendants admit so much of paragraph XII which alleges that certain representations were made to Plaintiffs. Defendants deny the allegations in paragraph XIII, XIV, XV and XVI."

The case was tried to a jury, which returned its verdict in favor of all defendants on the fraud cause of action and against defendants Clawson and Sundance Land and Livestock on the UTPA violation. It awarded plaintiffs general damages and $13,000 in punitive damages.

On appeal, defendants Clawson and Sundance Land and Livestock argue that the trial court erred in denying defendants' motion to remove the issue of punitive damages from the jury's consideration.

■ ■ An award of punitive damages for violation of the UTPA is authorized under ORS 646.638. The standard to be applied in determining whether punitive damages properly were awarded is the same as under the common law. *Crooks v. Payless Drug Stores,* 285 Or 481, 490, 592 P2d 196 (1979). The test for when punitive damages are recoverable, as stated in *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 425, 435 P2d 306, (1967), is that the conduct of the defendant must constitute a sufficiently aggravated violation of societal interest to justify the sanction of punitive damages as a preventive measure. An award of punitive damages involves factual determinations reviewable only for substantial evidence. *2-D's Logging v. Weyerhaeuser,* 53 Or App 677, 632 P2d 1319, *rev den* 292 Or 109 (1981). Therefore, we review the evidence and all inferences to be drawn from it in the light most favorable to plaintiffs to determine if there was substantial evidence.

Defendants admitted that they represented that they owned the lot and had the right and authority to sell

it. They also admitted that they represented that plaintiffs would be entitled to possession and occupancy of the lot upon entering into the contract to buy it. The evidence showed that in fact defendants did not own the lot and, in the end, had no authority to sell it. Even if we assume that defendants were operating under the assumption that the Clawson-Sprinkle agreement was valid, defendants nonetheless knew that they did not own the lot at the time of sale. Further, the jury was entitled to infer from the fact that Clawson had 14 years of experience in real estate transactions that he was aware of the potential problems that could occur under this type of sale.

Defendants contend that their conduct amounts to nothing more than negligence or breach of contract, citing *Schmidt v. Pine Tree Land Dev.*, 291 Or 462, 631 P2d 1373 (1981). There, the court, in affirming this court's reversal of an award of punitive damages, adopted our decision that found that the defendants' action in selling property to two different persons resulted only from a faulty record-keeping system. *See Schmidt v. Pine Tree Land Dev.*, 49 Or App 323, 619 P2d 673 (1980). We noted that "there is nothing in the record to show that the double sale in this case was the result of anything other than clerical error." 49 Or App at 329. To the contrary, here there is an admitted representation by defendants that was false and materially affected the transaction.

In *Chamberlain v. Jim Fisher Motors, Inc.*, 282 Or 229, 578 P2d 1225 (1978), the court reversed an award of punitive damages in an analogous situation. There the defendant had sold to the plaintiff a used car from its lot without possessing a certificate of title for the car, contrary to a statute requiring dealers to possess the certificate at the time of sale. The plaintiff was unable to collect on her insurance policy on the car after the car was damaged, because she did not have the certificate of title. The defendant was held strictly liable to the plaintiff for failure to possess the certificate of title. Plaintiff was awarded punitive damages for representations by defendant that it owned the car and had title to the car when it did not. Although the opinion is unclear concerning whether the review was for substantial evidence or was based on a re-examination of the facts, *see 2-D's Logging v. Weyerhaeuser*,

*supra,* 53 Or App at 687-88, the Supreme Court found the evidence insufficient to warrant an award of punitive damages. In reviewing the evidence, the court noted:

"There was no evidence in this case that the defendant made an express representation that it 'owned said automobile and had in its possession an assigned certificate of title' to it. The jury could properly have found that a representation that defendant owned said automobile was implied from the fact that defendant offered the car for sale, gave plaintiff a temporary registration, and told her that she would get her 'plates' in from two to six weeks. It could not be properly implied from these facts, however, that defendant then had an assigned certificate of title in its possession. Of more importance, there was no evidence that when defendant sold the car to plaintiff it knew or had reason to know that there would be any difficulty in securing a certificate of title to the car." 282 Or at 238.

In the present case defendants admitted that they had represented to plaintiffs that they owned the lot. An express representation was lacking in *Chamberlain,* but it was present in this case.

■     Defendants' protestation that the only thing involved here is a negligent business practice or a breach of contract simply does not withstand analysis. The evidence, taken at its strongest, shows more. The evidence and admissions show a knowing misrepresentation of the state of the title of property. In *Mabin v. Tualatin Development,* 48 Or App 271, 616 P2d 1196 (1980), we affirmed a judgment for punitive damages for similar false representations by the defendants. There the evidence showed that the defendants knew that the plaintiffs were interested in buying property with a view of the surrounding area. The defendants gave the plaintiffs unfounded and unsupportable assurances that the view from their lot would be protected. Concerning the award of punitive damages, we stated:

"These actions reveal a deliberate and conscious effort to misrepresent to plaintiffs the facts with respect to any view protection. Such conduct is ground for imposition of punitive damages. In *Allen v. Morgan Drive Away,* 273 Or 614, 542 P2d 896 (1975), the court noted:

" ' * * * The evidence reveals a deliberate and calculated effort to misrepresent the facts * * *. This is the

kind of conduct which should be deterred. The imposition of punitive damages will help to deter it.' 273 Or at 616.

"More recently in *Green v. Uncle Don's Mobile City,* 279 Or 425, 568 P2d 1375 (1977), the Supreme Court stated:

" ' * * * We have consistently held that the intentional statement of an untruth for the purpose of taking a plaintiff's money is the violation of a societal interest sufficiently great to warrant punitive damages.' 279 Or at 432.

"The award of punitive damages was proper. * * *" 48 Or App at 277.

There was sufficient evidence to allow the jury to determine that defendants' conduct was sufficiently arbitrary and unconscionable to constitute a grievous violation of societal interests.

Affirmed.

**RICHARDSON, P. J.,** concurring.

I join in the opinion of the majority. I emphasize, however, as we did in *2-D's Logging v. Weyerhaeuser,* 53 Or App 677, 632 P2d 1319, *rev den* 292 Or 109 (1981), and as the majority again indicates here, that it cannot be ascertained from the Oregon Supreme Court's opinions whether the general function of appellate courts in reviewing an award of punitive damages is simply to determine if there is substantial evidence to support the award or whether the court must also make a legal or policy determination regarding the appropriateness of punitive damages as a sanction for the conduct in question.

If there is a legal or policy component to our review, I would find it difficult to reconcile our decision here with *Chamberlain v. Jim Fisher Motors, Inc.,* 282 Or 229, 578 P2d 1225 (1978). However, if our review is only for substantial evidence, I agree that there was sufficient evidence to support the imposition of punitive damages here, whether or not there was enough evidence to support the verdict in *Chamberlain.*

As we noted in *2-D's Logging,* it seems clear that the Supreme Court *can* establish a review standard in punitive damages cases under which the appellate inquiry

goes beyond the question of evidentiary sufficiency. 53 Or App at 688-89. But as we also noted in *2-D's Logging,* the Supreme Court does not *appear* to have *adopted* a broader review standard, although it has periodically *applied* such a standard *de facto* and decided whether punitive damages were appropriate rather than whether they were proved.

Because I understand the Supreme Court to adhere nominally to the substantial evidence review standard, I agree with the majority opinion.